## KECK v. OKLAHOMA TAX COMMISSION.

No. 29661. Sept. 10, 1940.

Rehearing Denied Dec. 17, 1940.

*108 P. 2d 162.*

A. Francis Porta, of El Reno, for appellant.

F. M. Dudley, A. L. Herr, and C. D. Stinchecum, all of Oklahoma City, for appellee.

OSBORN, J. George Keck, hereinafter referred to as appellant, appeals from an order of the Oklahoma Tax Commission assessing a motor vehicle license tax against certain property of appellant's described as follows:

"One (1) Gar Wood Carryall Scraper, Serial No. 1907

"One (1) Gar Wood Carryall Scraper, Serial No. 1913

"One (1) Continental Carryall Scraper, Serial No. 1070."

The tax was levied under the provisions of article 7, chapter 50, Session Laws, 1937, on the theory that these implements are "trailers" as defined by the provisions of that act, and taxable as such.

It is appellant's contention that the property is machinery used in excavation and construction work and as such is not subject to a motor vehicle license tax, since said property is not designed for use nor used upon the public highways of this state within the contemplation of the legislative act. Appellant was the only witness that testified before the commission, and his testimony with reference to the nature and function of the equipment involved herein is as follows:

"Q. Are those trailers designed for hauling commodities or persons? A. It would be prohibited. Q. Are they designed for that purpose, answer my question? A. They are not. Q. How are they loaded with dirt? A. They are loaded by a seventy-nine, I believe it is, horsepower tractor, by lowering the blade, and the tractor pulling it forces the dirt in and closes the gate and goes and dumps it. Q. They are not loaded from above, but they pick up dirt from below? A. That is right. Q. They are not used to haul commodities or persons or property upon the highways of the state at all? A. They are not."

Cross-Examination by Mr. Cook.

"Q. These carryalls under discussion, do they rest on wheels? A. They do. Q. And would it be possible to transport property or haul property in them? A. Not profitable. Q. But is there a bed there so that it would be possible to haul property in there? A. You might put something in there and haul it. Q. The dirt that is scraped up, as you described it here, and placed in there, is hauled in that bed to wherever you want to dump it? A. That is right. Q. Would it be possible for a person to get in that bed and ride while it was being pulled? A. If he was a mind to, I guess so. Q. It would be possible? A. Yes. Q. Now, then, describe the scraper feature of this particular piece of machinery. As I understand you, there is a blade near the front that drops down and makes contact and goes into the ground? A. That is right. Q. By the force of the tractor pulling it along, it rises up and back into the bed of the carrying piece of machinery? A. That is right. Q. And after it becomes full from that dirt going in there you raise the blade and close the gate and haul it to wherever you want to dump it? A. That is right. Q. This piece of machinery is drawn by a tractor? A. That is right. Q. Do you do road building work anywhere besides in Major county? A. I do. Q. In moving, say you are working on a construction job and you move to another place five miles away, how do you transport it? A. If I was only going five miles I would leave the unit behind the tractor and go to it, providing it wasn't pavement. Q. And if it was a dirt road—you have moved these trailers in that manner? A. The contact that this piece of machinery makes with the ground is by rubber tires. The unit is carried by rubber tires. Q. Has it been necessary for you to cross paved highways with either of these units? A. No, I don't believe I have ever crossed a paved highway with it. Q. But you have moved it down dirt roads? A. Yes. Q. But never on pavement? A. That is right. Q. What kind of tractor do you use with it? A. A

crawler type. Q. You mean caterpillar? A. Commonly known as caterpillar, but a crawler type. The trail that that tractor runs on is a steel trail. Q. The reason you don't take it on the pavement is because of the steel rail or trail of the tractor and not because of the damage that the carryall would cause the pavement? Q. Well, that is not the reason, the reason is that it's prohibited to travel any distance with this tractor and trailer behind it. It is too slow and too expensive. When I move it, I pay $230 for moving."

Appellant further testified that the property was assessed for ad valorem taxation and that he paid ad valorem taxes thereon.

It is the contention of the appellee that the implements involved herein are within the definition of a "trailer" which is defined by subsection 7 of section 2 of the act as follows:

"(7) 'Trailer'. Any vehicle designed to be drawn by a truck, tractor or a truck-tractor, but supported upon its own wheels."

"Vehicle" is defined by subsection 1 of section 2 of said act as follows:

"(1) 'Vehicle'. Every device in, upon, or by which any person or property is, or may be, transported or drawn, excepting devices moved by human or animal power, when not used upon fixed rails or tracks."

It is a cardinal rule that in the construction of statutes the legislative intent must govern, and to arrive at the legislative intent the entire act must be considered, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended. Oklahoma Nat. Gas Co. v. Corporation Commission, 90 Okla. 84, 216 P. 917; In re Benson, 178 Okla. 299, 62 P. 2d 962. It frequently happens that the true intention of a legislative body is not expressed by the language employed in the statute, when literally construed. In such cases, the intent of such legislative body can only be effectuated by a departure from a literal interpretation of the language employed. Where such intention is plainly discernible from the provisions of the statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed. Darby-Lynde Co. v. Alexander (C. C. A. 10th) 51 Fed. 2d 56. The legislative intent in the instant case is not obscure. The same is clearly expressed in section 8 of the act, which is as follows:

"The registration fees imposed by this act upon vehicles, other than those manufacturers and dealers, *shall be for the purpose of reimbursing the state for the use of the public highways and for the maintenance and upkeep of the public highways of the state and for the administration and enforcement of the provisions of this act* and shall be in lieu of all ad valorem taxes, general or local, to which such vehicles may be subject, as personal property, under the laws of this state, and shall apply to every person operating any vehicle upon, over, along, or across any public highway of this state."

By giving due consideration to all of the applicable provisions of the act, we conclude that those vehicles which are not designed for use or used on the public highways of the state were not intended to be covered by the act. The property involved herein is primarily used for excavation and construction work, and the inconsequential and incidental use of the highways was not contemplated by the Legislature in its imposition of a tax thereon for "use of the public highways" within the meaning of the term as used in section 8, supra. It is clear that there is manifested no legislative intent to levy a vehicle license tax upon such property.

The order of the Tax Commission is reversed.

WELCH, V. C. J., and GIBSON, HURST, and DANNER, JJ., concur.