Gerald H. BARNES, Staff Counsel for the Corporation Commission of Oklahoma, on behalf of Mr. and Mrs. Charles Baker, et al., Appellants,

v.

TRANSOK PIPELINE COMPANY, Appellee.

No. 45994.

Supreme Court of Oklahoma.

March 9, 1976.

Gerald E. Kamins, Tulsa, for appellants.

Robert L. Lawrence, Charles B. Crane, Tulsa, and John C. Buckingham, McPherson & Buckingham, Oklahoma City, for appellee.

IRWIN, Justice:

This is an appeal from an order of the State Corporation Commission (Commission) denying relief to rural property owners (appellants) who complained that Transok Pipeline Company (appellee) had violated certain safety rules and regulations in laying a natural gas pipeline. The pipeline runs 144 miles from Ames, Oklahoma, to Oologah, Oklahoma.

Mr. and Mrs. Charles Baker, the principal appellants, own a ranch in Rogers County. The pipeline crosses the Caney River at the Rogers County line and passes within 240 feet of the Baker home. Appellants observed what they believed to be unsafe practices in the construction and laying of the pipeline and complained to Commission. An application for a show cause order was filed by staff counsel for Commission on behalf of appellants and a show cause order issued. Subsequenty, appellants retained private counsel and by amended complaints alleged that appellee, in various particulars, violated the rules and regulations of Commission governing the design and construction of the pipeline. Appellants sought, inter alia, to have the pipeline declared to be a permanent public and private nuisance and shut down, or in the alternative, to have a penalty imposed against appellee.

Numerous hearings and conferences were conducted by a referee of Commission; thereafter, he recommended denying relief and dismissing appellants' complaint. Commission en banc, in effect, sustained the referee's recommendations but ordered appellee to conduct hydrostatic tests by a certain date and to repeat the test at five year intervals, unless otherwise ordered. Appellants appealed.

We are concerned here with the Natural Gas Pipeline Safety Act of 1968, 49 U.S.C. A., §§ 1671–1684, which was enacted for the purpose of providing minimum Federal safety standards for the transportation of natural and other gas by pipeline. States were authorized to adopt additional or more stringent standards not incompatible with the Federal standards. The standards adopted by the States were not applicable to pipeline facilities subject to the Federal Power Commission under the Natural Gas Act. 30 A.L.R.3d 691. In conformity with the Federal enactment, our 1968 Legislature enacted 52 O.S.Supp.1968, §§ 5 and 5.1, which provided that the Commission shall "promulgate, adopt and enforce reasonable rules and regulations establishing minimum State safety standards for the design, construction, . . . and operation of all pipelines used for the transmission and distribution of natural gas in this State . . ." Thereafter, by Order No. 70510, Commission adopted for use in Oklahoma the USAS Standard B31.8 (1968 Ed.) Code for Pressure Piping–Gas Transmission and Distribution Piping Systems, and as recommended by B31.8, incorporated into the overall scheme the welding standards contained in API 1104 "Standards for Welding Pipe Lines and Related Facilities", 11th Ed. As used in this opinion "Code" refers to the entire scheme of design and construction standards for natural gas pipelines, while API 1104 refers to specific provisions relating to welds.

In considering the issues presented, we are guided by the following: The rules, regulations and standards adopted by Commission have the force and effect of law. *United States v. Stanolind Crude Oil Purchasing Co.,* 113 F.2d 194 [10th Cir. 1940]. An order of Commission will be affirmed if it is supported by substantial evidence and the law. *St. Louis-*

*San Francisco Railway Co. v. State,* Okl., 515 P.2d 233 (1973).

The Code establishes design and construction requirements for pipelines according to location and population. It, in, effect, requires a greater safety factor in the urban areas than in the rural areas. Appellants' property is located in a rural area and they contend the Code is unconstitutional because it denies them equal protection of law in that stricter (safer) standards are required for urban areas than rural areas.

■ There is no showing that a pipeline designed and constructed according to the safety standards prescribed for rural areas denies appellants equal protection of law; and, appellants have failed to demonstrate their standing to challenge an alleged unconstitutional denial of equal protection. *In Re Mayes-Rogers Counties Conservancy District v. Barnes,* Okl., 386 P.2d 150 (1963).

■ Appellants alleged in their complaint various ways appellee violated the rules and regulations of the Commission governing the design and construction of the pipeline. Those complaints, presented to and considered by the Commission, concerned the following:

(1) That inadequate wall thickness pipe was used on the Caney River Crossing and it did not have a double layer of protective wrapping.

(2) That the external protective wrapping on the pipe was improperly and inadequately applied.

(3) That at least one road crossing was not cased as required by the Code.

(4) That the pipe used was inadequate for the purpose of the pipelines.

(5) That appellee failed to place the pipeline a reasonable and practical distance away from any habitable residence.

(6) That the pipe joints were welded in an inferior and inadequate manner.

Commission made specific findings concerning each complaint. All the findings, except two which will be hereinafter discussed, are supported by substantial evidence and the law. We affirm those findings. The two findings which may not be affirmed and which are the primary target of appellants' brief are:

"(a) That the welding *substantially complies* with the requirements of the Code and the pipeline is safe for its intended use; and,

"(b) the pipeline was *designed and constructed* in a safe manner and *substantially complies* with the applicable safety rules and regulations." (emphasis ours).

The use of the word "substantially" is the source of the dispute. Appellants argue that the purpose of the Code is to establish minimum standards of safety so as to protect the general public. Appellants assert that in order to serve the purpose of the Code there must be full compliance, and that the pipeline either complies with the minimum standard or it does not.

The word "substantially" as used in paragraph (b) supra, must be considered in connection with the manner in which the "welding" was done and not in reference to the matters concerning design and other aspects of construction. Any other interpretation of "substantial" would render the finding inconsistent with other parts of the order. Commission specifically found the pipeline was *designed* to meet at least the minimum requirements of the Code. In reference to construction, all findings of Commission, except the finding relating to welding, in effect recited that at least minimum requirements of the Code were met. We conclude that the word "substantially" was used in paragraph, (b), supra, because the immediately preceeding finding was to the effect that the welding substantially complied with the requirements of the Code. Therefore, the issue presented is whether the Commission's finding that the welding *substantially complies* with the requirements of the Code is sufficient to support the Commission's order.

Pursuant to a Legislative mandate, Commission adopted rules and regulations establishing minimum State safety standards for the design, construction, maintenance and operation of pipelines used for the transmission and distribution of natural gas in Oklahoma. The Commission's Order [No. 70510] specifically provided that "the Rules, Regulations and Requirements, including the adoption of the 1968 Edition of the USAS Standard B31.8 Code to the extent and as set forth in Appendix "B", * * * (attached thereto), be and the same are hereby approved and adopted as minimum standards for the construction, maintenance and operation of natural gas pipelines, * * *." Appendix "B" provides that " * * * Welds * * * shall meet the standards of acceptability of the Standard 1104 'Standard for Welding Pipelines and Related Facilities', * * *." The definition of terms makes a clear distinction between "shall" and "should". Sec. 1.230 of Standard 1104 provides that the term "shall" as used in the standard indicates a mandatory requirement; and the term "should" indicates a recommended practice.

The Commission's order contains a provision similar to the waiver section of the Federal rules indicating that absent waiver, deviations from the standards would be considered violations. Chapter III, (8) Rule of Precedence of Exhibit "B" provides that "there shall be no deviation from this order except after authorization by the Commission; and [(9) Modification] provides that "If * * * it is determined that an undue hardship or an unsafe condition may result from application of any rule herein prescribed because of special facts, application may be made to Commission to deviate from the Rule."

Appellee contends that substantial compliance with the rules and specifications is sufficient on the theory that substantial compliance is full compliance with essential requirements and substantial compliance is shown when the purpose of the rules and specifications have been served.

In construction of statutes the word "shall" is usually given its common meaning of "must" and interpreted as implying a command or mandate depending upon the construction of the statute as a whole and the intentions of the Legislature. *State v. Hunt,* Okl., 286 P.2d 1088 (1955); and *Oklahoma Alcoholic Beverage Control Bd. v. Moss,* Okl., 509 P.2d 666 (1973). Substantial compliance with a statute is shown if it is made to appear that the purpose of the statute has been served. *Kasner v. Stanmire,* 195 Okl. 80, 155 P.2d 230 (1944). Where performance of statutory requirements is mandatory, there can be no "substantial compliance" except in accordance with the particular provision. *Oda v. Elk Grove Union Grammer School District,* Cal., 61 Cal.App.2d 551, 143 P.2d 490 (1943).

An examination of the standards adopted and approved by Commission conclusively shows that such standards would be the minimum standards allowed for welding of pipeline. It was mandatory that the welding meet the minimum standards. Commission in effect found that appellee had "substantially complied" with the "minimum standards" prescribed for welding. The issue presented was not whether the welding substantially complied with the minimum standards but whether the welding complied with the minimum standards of acceptability.

Commission found "there was conflicting evidence in the record in interpretation of the radiographs concerning whether they indicated a particular weld met or failed to meet the requirements of the 1104 welding Code." If in fact the evidence established a particular weld or welds failed to meet the minimum standards of the welding code, appellants were entitled to some relief involving that particular defective weld or welds. If in fact the evidence established there were no particular weld or welds which failed to meet the minimum standards of the welding code, appellants were entitled to a determination of that fact. Commission's finding that the weld-

ing substantially complies with the welding code is an insufficient adjudication of the issues presented and must be reversed.

Costs, including costs on appeal, assessed against appellee, Transok Pipeline Company.

Order reversed.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.