**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Thomas E. WENDT, Defendant.**

No. 60981.

Supreme Court of Oklahoma.

Oct. 22, 1985.

Stephen L. Stratton, Cathcart, Schroeder & Gofton, Oklahoma City, for plaintiff.

John M. Merritt, Buck, Merritt & Hoyt, Oklahoma City, for defendant.

## ORDER

Petition for Rehearing filed in the above styled and numbered cause is granted.

IT IS HEREBY ORDERED that the opinion of this Court heretofore promulgated and filed in this cause on October 23, 1984, reported at 55 OBJ 2253, be, and the same is, hereby vacated, withdrawn, and superseded by the substitute opinion of this Court this date adopted.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, KAUGER, and SUMMERS, JJ., concur.

LAVENDER and OPALA, JJ., concur in part, dissent in part.

HARGRAVE, J., dissents.

## CERTIFIED QUESTION FROM A FEDERAL COURT

■ The United States District Court for the Western District of Oklahoma certified to this Court the following question:

"Are provisions of insurance policies excluding the named insured, residents of the insured's household and the insured motor vehicle from uninsured motorist coverage in conflict with 36 O.S.1984 Supp. § 3636 and therefore void where the named insured is injured by the negligent acts of an uninsured permissive user/driver of the insured vehicle?"

Certified question answered in the affirmative. Once a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissibly limit uninsured motorist coverage are void as violative of the public policy espoused by 36 O.S.1981 § 3636.

## CERTIFIED QUESTION ANSWERED

ALMA WILSON, Judge.

In the latter part of 1979, State Farm Mutual Automobile Insurance Company issued four policies of insurance defining 19 year old Tommy Wendt as an *insured* thereunder. On March 11, 1980, Tommy and a friend, Gilreath, embarked upon a trip from Oklahoma City, Oklahoma to Las Vegas, New Mexico in Tommy's 1978 Chevrolet pickup truck. With Tommy's permission, Gilreath drove the pickup truck while Tommy slept. Near Flagstaff, Arizona, on Interstate 40, Gilreath fell asleep at the wheel. The truck left the road and crashed, causing injuries to Tommy, the insured.

At the time of the accident, Gilreath was uninsured, thus leaving Tommy the victim of an uninsured motorist operating a non-owned vehicle. However, at the time of the accident, the four policies of insurance defining Tommy as an insured were in full force and effect. Tommy attempted to recover for his injuries under the provisions of each of these policies, but State Farm denied any liability to Tommy under the four policies pointing to subsequent exclusionary language appearing in the body of the policies which purports to eliminate coverage previously granted Tommy by policy provisions defining Tommy as an insured thereunder. State Farm then filed suit for declaratory judgment in federal district court for a determination of coverage under the policies. Pursuant to the provisions of the Oklahoma Uniform Certification of Questions Act, 20 O.S.1981 § 1601 et seq., the United States District Court for the Western District of Oklahoma certified to this Court the following question:

"Are provisions of insurance policies excluding the named insured, residents of the insured's household and the insured motor vehicle from uninsured motorist coverage in conflict with 36 O.S.1984 Supp. § 3636 and therefore void where the named insured is injured by the negligent acts of an uninsured permissive user/driver of the insured vehicle?"

I

Oklahoma's uninsured motorist statute, at 36 O.S.1981 § 3636, provides in unequivocal, mandatory terms that:

(A) *No policy* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any

person arising out of the ownership, maintenance, or use of a motor vehicle *shall be issued, delivered, renewed, or extended in this state* with respect to a motor vehicle registered or principally garaged in this state *unless the policy includes the coverage described in subsection (B) of this section.*

(B) *The policy referred to in subsection (A) of this section shall provide coverage* therein or supplemental *thereto for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall not be less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47, Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured. The uninsured motorists coverage shall be upon a form approved by the State Board for Property and Casualty Rates as otherwise provided in the Insurance Code and may provide that the parties to the contract shall, upon the demand of either, submit their differences to arbitration; provided, that if agreement by arbitration is not reached within three (3) months from date of demand, the insurer may sue the tortfeasor. [Emphasis added]

▆▆ In conformity with the clearly expressed legislative intent, *above*, every automobile liability policy issued in this state must provide uninsured motorist coverage for "persons insured thereunder." Accordingly, this Court has examined with critical scrutiny policy provisions which purport to dilute the legislatively mandated uninsured motorist coverage. In *Keel v. MFA Insurance Co.*, 553 P.2d 153 (Okl. 1976), this Court voided "other insurance" clauses to the extent that those clauses

precluded the insured from stacking coverages under separate policies. In *Biggs v. State Farm Mutual Automobile Insurance Co.*, 569 P.2d 430 (Okl.1977) this Court invalidated the "physical contact" requirement for hit-and-run coverage. In *Porter v. MFA Mutual Insurance Co.*, 643 P.2d 302 (Okl.1982), this Court invalidated the "consent to settle" clause. In *Lake v. Wright*, 657 P.2d 643 (Okl.1982), this Court held the "limits of liability" clause was void and unenforceable as against public policy. In *Chambers v. Walker*, 653 P.2d 931 (Okl. 1982), this Court held invalid a clause in an uninsured motorist policy which permitted the uninsured motorist carrier to offset any amounts paid or payable under Workers' Compensation against the amounts payable under the uninsured motorist coverage. In *Uptegraft v. Home Insurance Co.*, 662 P.2d 681 (Okl.1983), this Court held invalid a clause in an uninsured motorist policy requiring the insured to sue the tort-feasor within two years or lose his uninsured motorist coverage. In *Heavner v. Farmers Insurance Company*, 663 P.2d 730 (Okl. 1983), this Court refused to apply the insurer's "insured motor vehicle exclusion" to deny uninsured motorist coverage to a passenger/plaintiff under the driver/tort-feasor's policy. We today reiterate and re-emphasize the viability of our prior decisions, which hold to the principle that once a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissively limit uninsured motorist coverage are void as violative of the public policy espoused by 36 O.S.1981 § 3636, *supra*.

## II

The four policies presently under consideration, in full force and effect at the time of Tommy Wendt's accident, are identical form policies issued by State Farm. Premiums were admittedly paid and collected on each. Each of the four policies defines the unqualified word "insured" in the following manner:

*"Insured—The unqualified word 'insured' means:*

*(1) The first person named in the declarations and while resident of his household, his spouse and the relatives of either;*

(2) Any other person while occupying an insured motor vehicle; and

(3) Any person, with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (1) or (2) above."

The "first person named" in Policy No. 133–0974–D10–36; No. 1330–976–D21–36; and No. 149–572–B16–36A is Charles Wendt, Tommy's father. Tommy, however, is clearly a defined insured under these policies as the parties stipulated to Tommy's *residency* in Mr. Wendt's household. Digressively, Mrs. Wendt is likewise a defined insured in these three policies as *resident spouse* of the "first person named". The "first person named" in the fourth policy, No. 155–4288–E21–36 is Tommy Wendt. All policies provide coverage for specific motor vehicles, i.e., No. 133–0974–D10–36, a 1976 Oldsmobile; No. 1330–976–D21–36, a 1975 Chevrolet farm truck; No. 149–5742–B16–36A, a 1977 Ford farm truck; and No. 155–4288–E21–36, a 1978 Ford pickup truck. Thus depending upon the particular policy under which recovery is sought, these vehicles ostensibly qualify, (or do not qualify), as "insured motor vehicles". The policies provide:

"Insured Motor Vehicle—means:

(1) an *owned motor vehicle* provided the use thereof is by such first named insured or resident spouse or any other *person* to whom such first named insured or resident spouse has given permission to use such vehicle if the use is within the scope of such permission, or

(2) an *automobile* not owned by the named insured or any *resident* of the same household other than a *temporary substitute automobile,* while being operated by such first named insured or resident spouse,

but the term *insured motor vehicle* shall not include any motor vehicle while being used as a public or livery conveyance, or any motor vehicle while being used without the permission of the owner.

Uninsured Motor Vehicle—means:

(1) a land motor vehicle with respect to the ownership, maintenance or use of which there is in at least the amounts specified by the financial responsibility law of the state in which the described motor vehicle is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any *person* or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is any coverage thereunder or is or becomes insolvent; or

(2) a hit and run motor vehicle as defined."

The policy, additionally, states the term "uninsured motor vehicle" shall not include:

"(i) A vehicle defined herein *as* an insured motor vehicle;

(ii) A land motor vehicle furnished for the regular use of the named insured or any resident of the same household; ...."

As regards uninsured *motor vehicle* coverage, the policies further provide:

"COVERAGE U–DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED MOTOR VEHICLES

*To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle* because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle...."

It is State Farm's position that based upon the policy provisions quoted herein, Tommy Wendt's pickup truck is not an "uninsured motor vehicle", under any of

the four policies here in controversy, and therefore, Tommy is not entitled to the uninsured motorist protection afforded by the policies. This conclusion, we find untenable.

### III

■ Coverage under each of the policies in this case must be viewed independently. *Coverage in each case stems not from owning an automobile, but from falling within the definition of an insured under any given insurance contract. Any attempt to tie uninsured motorist coverage to automobiles alone, rather than to people, must fail. See,* Cothren v. Emcasco Insurance Company, 555 P.2d 1037 (Okl.1976). Tommy Wendt is entitled to recover under Policy No. 155–4288–E21–36 as an insured thereunder, albeit, the accident occurred in the precise vehicle named in that policy. Otherwise, the protection mandated by § 3636 is frustrated inasmuch as the named vehicle was effectively "uninsured" when driven by an uninsured permissive motorist.

### IV

■ Tommy Wendt is likewise entitled to recover under the remaining policies here in dispute. In each policy Tommy is a defined insured. Moreover, the vehicle involved in the accident is an uninsured motor vehicle as to these policies. The proffered exclusion, "uninsured motor vehicle shall not include a land motor vehicle *furnished* for the regular use of the named insured or any resident of the same household", is inapplicable. Based on the stipulated facts, Tommy was a passenger in a truck he owned and the truck was not "furnished" for his use by his parents or anyone else. We find no exclusion, then, which prevents Tommy from recovering under these policies. Neither do we find "stacking" preclusive of Tommy's recovery under these policies.

■ In *Keel, supra,* this Court invalidated policy exclusions that prevented concurrent recoveries under policies of insurance for which separate premiums were collected by the insurer. We stated:

"The insured in this case has two policies for which he has paid an additional premium for uninsured motorist coverage. There is no dispute that both policies cover the insured in this accident. The pyramiding or the stacking of the policies is the only dispute. By imposition of both policies, the insured is not receiving a windfall. *He has paid the insurer a premium for this protection, and is only attempting to recover the actual amount of his damages which are within the limits of both policies. On the other hand, the insurer has collected a premium for each policy. In such instance, it would be manifestly unjust to permit the insurer to avoid its statutorily imposed liability by its assertion of 'other insurance clauses' which would deny the insured from receiving that for which he has paid a premium." Id.* at 156. [Emphasis added]

Where insurance premiums have been paid for separate policies, then the insurer must provide coverage under each policy. Here Tommy Wendt is an insured under his parents' policies by a policy definition which defines as an "insured" any resident relative of the insured's household. Tommy's parents had a reasonable contractual expectation that Tommy would be covered under the three policies. Uninsured motorist premiums were paid on each of the three policies. An insurer may not thus be unjustly enriched.

The facts of this case further reflect that Tommy Wendt comes within the auspices of our recent decision in *Babcock v. Adkins,* 695 P.2d 1340 (Okl.1984). *Babcock* dealt with strangers to an insurance policy (insured only due to their status as passengers in an insured vehicle) who wished to "stack" the coverages under other policies of the named insured. There, this Court stated:

"In line with our language in *Shepard,* we now hold that the occupants of an insured motor vehicle involved in an accident, who are entitled to uninsured motorist coverage solely because of their

status as passengers, may not stack the uninsured motorist coverage under separate policies purchased by the owner of the involved vehicle for a noninvolved vehicle or vehicles unless *those passengers also qualify as insureds under those separate policies."* *Id.* at 1343. [Emphasis added]

Finally, the case of *Shepard v. Farmers Insurance Co., Inc.*, 678 P.2d 250 (Okl. 1983), has been cited to this Court as dispositive herein. Such is not the case. In *Shepard* the insurance policy *by definition precluded* as an 'insured' any resident relative of the named insured who owned an automobile. This Court held this definition permissible and stated:

> "Although upholding the exclusionary language might appear to create a situation in which a relative-vehicle owner would receive less protection than a relative-non-owner merely based upon vehicle ownership, *coverage in each case stems not from owning an automobile, but from falling within the definition of an 'insured' under any given insurance contract.*
>
> *Keel* and its progeny required that a claimant be permitted to recover upon multiple policies for which multiple uninsured motorist premiums had been paid. *However, a claimant may not recover unless he or she is an 'insured', and the terms of the contract determine who is an insured thereunder."* *Id.* at 252. [Emphasis added]

The instant case is plainly distinguishable. Here, the terms of the contract define Tommy Wendt as an insured. The claimant in *Shepard* never became an insured, by definition.

Tommy Wendt is entitled to recover under the uninsured motorist portion of each of the policies involved in this suit.

CERTIFIED QUESTION ANSWERED.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, KAUGER and SUMMERS, JJ., concur.

LAVENDER and OPALA, JJ., concur in part, dissent in part.

HARGRAVE, J., dissents.

OPALA, J., with whom LAVENDER, J., joins, concurring in part and dissenting in part.

The certified federal-court question calls for our decision on [1] whether the plaintiff's damages for bodily injury he sustained in his own insured vehicle while it was being driven by an authorized but uninsured driver fall under the UM coverage of his own policy, and [2] whether the plaintiff can recover these damages as a resident relative insured under three separate policies of his parents, none of which describes the plaintiff's vehicle on the declaration page. The *court* answers *both* questions *in the affirmative,* while *my answer to the first question is in the affirmative and to the second in the negative.*

According to the stipulated facts, the plaintiff [Wendt] was riding as a passenger in his own pickup truck. The permissive driver of the truck had no liability insurance to cover him while operating a vehicle he did not own. While Wendt was asleep, the driver also fell asleep. The vehicle left the road and crashed, causing injuries to Wendt.

At the time of the accident, a State Farm policy issued to Wendt for his pickup truck was in force. Also in effect were three other State Farm policies—with coverages and provisions identical to those in Wendt's own policy [1]—which had been issued to Wendt's parents, with whom he lived. Wendt urged that he should be entitled to the uninsured motorist [UM] coverage provided by each of the four policies, and that the applicable exclusions contained in those policies violated the public policy mandate of the statute regulating UM coverage, 36

---

**1.** It was stipulated in the federal court case that all four policies contain identical coverages and provisions.

O.S.1981 § 3636.[2] State Farm contended that Wendt is not entitled to recover under any of the policies [1] because his truck, the vehicle in which he was injured, did not qualify as an "uninsured motor vehicle" either under the provisions of the policies in dispute or under the terms of the UM statute, and [2] as an insured resident relative under his parents' policies, Wendt *was also excluded* from the UM coverage of those policies inasmuch as his injuries were incurred *while he was occupying his truck* —a vehicle excluded from protection under those policies because, while it was "owned by a resident of the same household," it was not described in the declaration page of any of those policies.[3]

I concur insofar as the court holds today that the provisions of Wendt's own policy, which operate to deny him UM coverage, are void as contrary to the public policy mandate of § 3636. As the *named insured* of the policy covering his truck, Wendt is entitled to the benefit of the UM coverage it provides him, when he himself is injured through the negligence of an uninsured motorist.[4]

Today's pronouncement also holds that the provisions in Wendt's parents' policies, which exclude him from UM coverage, are void under § 3636. I cannot accede to the court's expansive view of that statute's mandate. I would pronounce that the clear and unambiguous contractual provisions of his parents' policies, which operate to exclude Wendt from UM coverage, are not contrary to the UM statute when he is *the named insured in another policy* that protects his car and gives him UM coverage.

Although I am satisfied that the parents' policy clauses, invoked here by State Farm, do indeed indicate that the insurer did not *contractually* assume the liability sought to be imposed, my inquiry cannot stop at this point but must proceed further. Since State Farm is the obligor under a *statutorily* prescribed coverage, the regulatory statute—§ 3636—would control over any restrictive policy provisions that give Wendt *less* UM protection than the law commands. The crucial point under inves-

**2.** The pertinent provisions of 36 O.S.1981 § 3636 are:

"(A) *No policy* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be issued*, delivered, renewed, or extended in this state *with respect to a motor vehicle* registered or principally garaged in this state *unless the policy includes the coverage* described in subsection (B) of this section.

(B) *The policy* referred to in subsection (A) of this section *shall provide coverage* therein or supplemental thereto *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. *Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7-204 of Title 47, Oklahoma Statutes,* as the same may be hereafter amended; provided, however, that *increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured....*

\* \* \* \* \* \*

(F) *The named insured shall have the right to reject such uninsured motorist coverage in writ-*

*ing,* and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." [Emphasis added.]

**3.** In addition to the policy provisions quoted in the court's opinion, the policies also contained the following exclusion:

"COVERAGE U - DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED MOTOR VEHICLES
EXCLUSIONS - SECTION III
THIS INSURANCE DOES NOT APPLY:

\* \* \* \* \* \*

(b) TO *BODILY INJURY* TO AN *INSURED* WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A LAND MOTOR VEHICLE OWNED BY THE NAMED INSURED OR ANY *RESIDENT* OF THE SAME HOUSEHOLD, IF SUCH VEHICLE IS NOT AN *OWNED MOTOR VEHICLE;....*" [emphasis in original]
An "owned motor vehicle" is defined in the policies as a motor vehicle described on the declarations page of each policy.

**4.** *See Babcock v. Adkins, infra* note 16 at 1342–1343.

tigation is hence whether the UM coverage Wendt *claims* under his parents' policies is mandated by § 3636 for a person in his legal position. I am constrained to give a negative response to this dispositive issue.

The court reasons that because § 3636, when read literally, requires that *every* automobile liability policy include UM coverage "for the protection of *persons insured thereunder*," and inasmuch as Wendt qualifies as an "insured" under each of his parents' policies by force of his status as a resident relative, *any* clause operating to deny him UM coverage is invalid. I cannot accede to the court's gross over-simplification of the determinative issue in controversy.

Where legislative intent is plainly discernible from the provisions of the statute considered as a whole, the real purpose and intent of the legislature must prevail over the literal import of the words used.[5] Once it appears that the statute's purpose has been served, the statute's mandate is satisfied.[6]

While the UM statute's *general* purpose is to afford protection to insureds from the effect of personal injury resulting from tortious conduct of an uninsured motorist, the *amount* of protection to be afforded cannot be *less* than the *minimum* amount of public liability coverage required by the statutes that regulate financial responsibility.[7] The UM statute does indeed contemplate that insureds may need additional coverage. This is doubtless why insurance companies are required to offer increased limits of liability, if requested by the purchaser (or named insured). If *no* UM coverage at all is desired, named insureds have *the right to reject it* in writing. UM protection is, then, *only conditionally mandated.* Its effectiveness as a public benefit measure is initially controlled by actions of the named insured of the policy.

While the *general public* is shielded against financially irresponsible motorists by the public liability coverage that is mandated by the Financial Responsibility Act,[8] the UM statute is designed to compel insurers to provide protection only for that insured who wishes not to reject the *minimum* protection against loss occasioned by an uninsured motorist. In short, the former act *commands vehicle owners* to maintain *public liability* protection, while the latter act—*a mandate to insurers*—directs that, absent the insured's written rejection, an *automobile policy* must *include minimum UM coverage.* The *lone,* though doubtless the *most revealing,* nexus between the two enactments is found in the mention made in § 3636(B) of the *minimum amount* of liability coverage that is mandated by the financial responsibility law.[9] This reference plainly demonstrates a legislative intent to confine the public policy mandate for the statutory UM coverage level to no more than the minimum amount of insurance prescribed by law for public liability protection.[10]

The real objective of the UM statute is, then, to mandate for the insured, in the event he suffers injury from the tortious conduct of an uninsured motorist, the *same* protection he would have if the harm-dealing motorist had carried *the minimum* required public liability insurance.[11] The manifest purpose of § 3636 is hence com-

---

**5.** *Keck v. Oklahoma Tax Commission,* 188 Okl. 257, 108 P.2d 162 [1941].

**6.** *Barnes v. Transok Pipeline Co.,* Okl., 549 P.2d 819, 822 [1976].

**7.** *See* 36 O.S.1981 § 3636 (B), *supra* note 2.

**8.** 47 O.S.1981 §§ 7–101 et seq. Section 7–204 prescribes the minimum amount of public liability insurance required by the Act.

**9.** *See* § 3636 (B), *supra* note 2. The *telling nexus* between the Financial Responsibility Act and § 3636 (B) *has gone unnoticed* by our UM jurisprudence.

**10.** *See Transportation Insurance Company v. Wade,* 106 Ariz. 269, 475 P.2d 253, 257 [1970]; cf. *Interinsurance Exchange of the Automobile Club of Southern Calif. v. Alcivar,* 95 Cal.App.3d 252, 156 Cal.Rptr. 914, 923 [1979] and *Tuthill v. State Farm Insurance Company,* 19 Ill.App.3d 491, 311 N.E. 770, 775 [1974].

**11.** *See Biggs v. State Farm Mutual Automobile Insurance Co.,* Okl., 569 P.2d 430, 433 [1977] and *Babcock v. Adkins, infra* note 16 at 1343.

pletely met by the protection afforded Wendt by his own policy in which he is the named insured and for which UM coverage has been provided. *Strictly as a matter of public policy* mandate, a named insured, who already has the statutorily-prescribed minimum UM protection, *cannot be entitled by law* to the UM coverage of *every* insurance policy under which he qualifies as a resident relative insured, if the terms of the latter policies, when applied to the facts of the particular loss, clearly and unambiguously exclude him from UM coverage. One who is a named insured *protected* by his own policy no longer can be regarded as coming within the language or intent of the statute's command for *minimum* UM coverage.

In sum, State Farm did not offend the statute's command for *minimum* UM coverage. Not only did it provide Wendt the *mandated minimum* for his own policy, it also afforded him *added* protection against UM loss occurring in the three vehicles insured by his parents. No more is required by § 3636.

Section 3636 does indeed contemplate UM protection for *persons who are insured.* This much is clear from *Cothren v. Emcasco Insurance Co.,*[12] where the court held that UM coverage does not depend upon any particular vehicle, but instead follows the insured. In that case the court found implicit within the statute a legislative intent that UM coverage should reach beyond the vehicle insured to the *unprotected* insured person. Today, the court invokes *Cothren* to expand legislative poli-

cy and hold that UM coverage must also extend *beyond the insured vehicle to an already protected insured.*

While the court has effectuated statutory policy on UM coverage by attaching the benefit of that coverage to the insured *person,* today's decision is made *without* regard to whether the *person* has already received the minimum UM protection. The legislature surely did not contemplate, nor intend, that only one phrase of § 3636 be singled out for expansive enforcement, while the rest of its text either be ignored or go unnoticed. An insurer's liability may not be extended judicially *both* beyond the scope of the statute's mandate and beyond the limit of the insurer's voluntary undertaking expressed by the terms of the policy that was issued.

Where claimants seek to aggregate the UM coverage provided by multiple policies ("stack"), Oklahoma's case law has established a frame for analysis that is distinct from that used when an insured presses for UM coverage although there is an exclusion in his policy. The principal decisions addressing stacking problems are: *Keel v. MFA Insurance Co.,*[13] *Richardson v. Allstate Insurance Co.,*[14] *Lake v. Wright,*[15] and *Babcock v. Adkins.*[16]

In *Keel* the claimant sought to stack the UM coverage of two policies for which he had paid separate premiums. Each policy contained "other insurance" clauses which, in effect, limited the insurer's total liability to the highest applicable limit of liability in any single policy. The court held these

**12.** Okl., 555 P.2d 1037 [1976]. In *Cothren* the claimant was injured while riding an uninsured motorcycle which was owned by the named insured of the policy in question. Contained in that policy was an exclusion which operated to deny UM coverage to an insured when injury resulted while occupying an uninsured vehicle owned by the named insured. The claimant qualified as an insured by virtue of his status as a resident relative of the named insured. The court held that exclusion void, reasoning that § 3636 requires UM coverage for the protection of *persons* who are insured, and that UM coverage does not depend upon any particular vehicle.

**13.** Okl., 553 P.2d 153 [1976].

**14.** Okl., 619 P.2d 594 [1980].

**15.** Okl., 657 P.2d 643 [1982].

**16.** Okl., 695 P.2d 1340 [1984]. In *Babcock* the court held that occupants of an insured motor vehicle who are insureds solely because of their status as passengers are not entitled to stack the UM coverage of separate policies purchased by the named insured to cover vehicles other than the vehicle they occupied. The holding was conditioned upon those passengers not otherwise qualifying as insureds under those separate policies.

clauses void for three reasons: (1) The UM statute requires that each policy provide UM coverage, unless it was rejected in writing, (2) the statute provides a minimum for UM coverage but allows the insured to purchase additional coverage, if desired, and (3) the claimant has paid separate premiums for each UM coverage. There was no dispute in *Keel* that both policies provided coverage to the claimant. The only issue before the court was the *extent* of coverage available.[17] In the present case the insurer-asserted absence of *coverage* is at the heart of the controversy.

In *Richardson* the claimants were the named insured, his wife and their two minor children. They sought to stack the UM coverage under a single policy covering three vehicles. Applying the *Keel* rationale, the court held that since multiple premiums have been paid for multiple coverage, and the named insured purchased UM coverage for himself and his family, stacking was permissible notwithstanding the policy provision limiting the insurer's liability.

The *Keel* rationale was also applied in *Lake*, where it was held that when six premiums have been paid for UM coverage on six vehicles, a clause precluding stacking was void as contrary to public policy. There, the claimants were a mother and daughter. They had been injured in a vehicle that was not covered by any of the six policies. Again, neither basic nor minimum statutory UM coverage was disputed.

In each of the noted cases, the invalidated provisions, unlike the exclusions that are here before the court, affected the extent of the insurer's liability rather than the scope of coverage. The *stacking issue, which presupposes the presence of coverage,* was resolved primarily upon application of contract principles under which the named insured is entitled to benefit from *all* the policies for which premiums have been paid.[18] *More significant is the fact that none of the past claimants was a named insured of the vehicle in which the loss occurred who was seeking additional UM coverage as a resident relative under policies held by others.* Rather, the successful claimants in the past were either (1) a named insured of every policy whose UM coverage was sought or (2) an insured under *each* policy *solely* because of their unclouded status as resident relatives. Wendt differs from those claimants in that he seeks *additional* UM coverage as a resident relative insured *while* being the named insured of another policy that specifically describes the vehicle in which he was injured.[19] Because under his own policy Wendt has obtained at least the minimum statutorily-prescribed amount of UM protection for the car in which the loss occurred, he can have no legal expectation of coverage under his parents' policies strictly on public policy grounds.[20] The

17. *Keel v. MFA Insurance Co., supra* note 13 at 156.

18. Wendt's parents had no reasonable expectation that Wendt would be entitled to the UM coverage of their policies, because State Farm made *no* promise to provide him coverage, either implicitly or explicitly. If Wendt's parents intended that the premiums they have paid afford Wendt coverage, the existence of their subjective intent is rebutted by the clear and unambiguous policy terms. *See Menke v. Country Mutual Insurance Company,* 78 Ill.2d 420, 36 Ill.Dec. 698, 401 N.E.2d 539, 542 [1980]; *Cheseroni v. Nationwide Mutual Insurance Company,* 410 A.2d 1015, 1016 [Del.Supr.1980] and *Hartford Accident and Indemnity Company v. Bridges,* 350 So.2d 1379, 1381 [Miss.1977]. In any event, one must assume that the premiums paid by Wendt's parents have been calculated in

light of the exclusions contained in the policy. *See Patton v. Safeco Insurance Company of America,* 148 Ind.App. 548, 267 N.E.2d 859, 863 [1971].

19. Had Wendt been injured while occupying one of his parents' vehicles, he would have been entitled to the UM coverages provided by both the policy covering the vehicle in which he was injured and the policy in which he is the named insured. *Babcock v. Adkins, supra* note 16 at 1342–1343.

20. Still to be left unanswered is the question whether a named insured who has effectively rejected UM coverage under his own policy would nonetheless be entitled to the UM coverage of policies under which he qualifies as a resident relative insured.

unambiguous terms of the latter policies, when applied to the facts of this case, clearly exclude him from UM coverage when his injury takes place in a vehicle not described in the declaration page of the parents' policies.

Each resident relative insured in the cited stacking cases was entitled to multiple UM coverage because, among the other stated reasons, each had *no* separate, independent source of UM protection. *None of them had the right (a) to determine whether a policy would include any UM coverage or (b) to purchase increased coverage.* Inasmuch as resident relatives rely for insurance protection upon the named insured—usually the head of the household, they have the legal expectation of UM protection from policies under which they qualify as an insured, although the degree of protection need not always be coextensive with that of the named insured. The protection afforded those insureds as resident relatives is ephemeral. It provides a stopgap until they may secure protection through independent sources, i.e., their own policies. Until then, they are entitled to all the available UM coverage that the named insured has purchased.[21]

By today's judicial fiat Wendt is granted *unpurchased coverage* that is *not* mandated by § 3636 for a person in his status. Moreover, insurance companies are stripped of their right to contract for the exclusion from UM coverage of a resident relative insured who individually owns and insures a vehicle of his own and thus provides himself with at least the minimum statutorily-prescribed protection.[22] Without a warrant in the § 3636 language, the court has also extended mandatory UM coverage to transient relatives whose own UM coverage meets, if not exceeds, the statutory minimum. Today's radical circumscription of an insurer's right to contract is *not* supported by the text of the controlling statute. Premiums will now surely increase, and, as a likely consequence, a higher number of policyholders will be forced to reject UM coverage.

Neither does the court's reasoning insure extended protection for the public. On the contrary, today's decision makes it easy for insurance companies to avoid the very liability that is being imposed on them. All they need do is recast the term "insured" by the use of a definition from which resident relatives who own an automobile will be omitted. This technique of UM coverage exclusion has already met with the court's approbation.[23]

Where the scope of an insurer's obligation is limited by clear and unambiguous contractual terms which do not offend any statutory policy mandate, increased liability may be created *only* through a legislative amendment. If the statute were amended, it would not take effect retroactively. Today's judicial expansion of UM coverage affects the obligation of all presently effective contracts. It should apply only to Wendt and to future claimants rather than retrospectively.[24]

**21.** *Richardson v. Allstate Insurance Co., supra* note at 14 at 598.

**22.** The court has joined but a small group of jurisdictions permitting the named insured of the vehicle in which the loss occurs to stack the UM coverage of policies under which he is a resident relative insured. *See Bradley v. Mid-Century Insurance Company,* 409 Mich. 1, 294 N.W.2d 141 [1980]; *Ady v. West American Insurance Company,* 69 Ohio St.2d 593, 433 N.E.2d 547 [1981]; *Goodrich v. Lumbermens Mutual Casualty Company,* 423 F.Supp. 838 [D.Vt.1976] and *Bell v. State Farm Mutual Automobile Insurance Co.,* 157 W.Va. 623, 207 S.E.2d 147 [1974].

**23.** *See Shepard v. Farmers Insurance Co., Inc.,* Okl., 678 P.2d 250 [1983]. In *Shepard,* the court was faced with the question whether a resident relative of the named insured of two policies was entitled to UM coverage under those policies. Excluded from the definition of "insured" were relatives of the named insured living in the same household who owned their own automobile. The court held that the exclusion did not contravene UM public policy for two basic reasons. First, *the claimant did not fall within the* policy's definition of an insured, and second, the exclusion triggered operation of our mandatory public liability statute (financial responsibility law) and placed the burden of carrying insurance upon automobile owners.

**24.** This approach was used in *Snethen v. Okla. State Union of the Farmers Educ. and Co-op. Union of Amer.,* Okl., 664 P.2d 377, 382 [1983].

Contract invalidation should never be rested upon a statute that does not clearly address the outer parameters of public policy which brought the contract into question. Since § 3636 *neither prohibits the exclusion of otherwise protected resident relatives from UM coverage nor mandates for them multiple UM coverage*, the court's invalidation of the exclusions in Wendt's parents' policies restricts, without any statutory warrant, the right of purchasers, as well as insurers, to contract for reasonable premium rates. Concerns of this nature impelled my dissent from the court's recent pronouncement in *Karlson v. City of Oklahoma City*.[25] Once again, I must for like reasons recede from today's opinion.

In sum, I would answer the federal court's question before us by holding that when a named insured suffers UM loss in a car insured by his own policy which provides him a minimum UM coverage, clear and unambiguous *exclusions* from UM coverage under *other* persons' policies in which he is a resident relative insured do not offend § 3636. If a more expansive public policy mandate—one that would provide a more extensive shield from the tortious conduct of an uninsured motorist—is indeed needed, it should be articulated *only* by the legislature.

---

**25.** Okl., —— P.2d ——, 56 OBJ 1255, 1258 [Opala, J., dissenting] (Nos. 63090 and 63046, cons. under 63090) [1985].

In *Karlson,* the claimant-insured sought to recover under his own automobile insurance policy's UM coverage, because his damages exceeded the city-tortfeasor's limit of liability set in the Political Subdivision Tort Claims Act [now the Governmental Tort Claims Act, 51 O.S.Supp. 1984 §§ 151 et seq.]. The *terms* of the policy provided coverage only for "legally recoverable liability." The court allowed the recovery sought. It was pointed out that, unless the statute so mandates, the UM carrier should not be responsible for a liability that has no legal existence.