Regina L. MOSER, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY and First State Insurance Company, Defendants.

No. 65959.

Supreme Court of Oklahoma.

Dec. 9, 1986.

Rehearing Denied Jan. 22, 1987.

---

Rex K. Travis and Kenneth A. Brokaw, Oklahoma City, for plaintiff.

Cheek, Cheek & Cheek by Alex Cheek and Rodney J. Heggy, Oklahoma City, for defendant First State Ins. Co.

LAVENDER, Justice.

The United States District Court for the Western District of Oklahoma has certified two questions of law to this Court pursuant to the Uniform Certification of Questions of Law Act.[1] The first question certified, in effect, requests this Court to determine whether the provisions of Oklahoma's uninsured motorist statute[2] apply to a policy of excess liability coverage, commonly referred to as an umbrella liability policy.

The following facts were presented to this Court in connection with the proferred question. A large multi-state corporation, with an inflexible policy against maintaining uninsured motorist coverage on company vehicles, sought and obtained primary automobile liability coverage without uninsured motorist coverage. A valid rejection of uninsured motorist coverage was made in connection with the primary automobile liability coverage. The company also obtained excess liability coverage designed to cover situations where the company's liability exceeded primary policy limits. This excess policy provided coverage of potential company liability in excess of one million dollars up to a limit of twenty-five million dollars. No rejection in writing was ever made as to uninsured motorist coverage in regard to the excess liability policy. An employee of the company was killed while driving a company vehicle. The death of the employee is alleged to have been caused by the negligence of two other uninsured and underinsured drivers. The question presented is whether the insurance policy providing the excess coverage was required by 36 O.S. 1981 § 3636, to

---

[1] 20 O.S. 1981 §§ 1601 through 1612.

[2] 36 O.S. 1981 § 3636.

provide uninsured motorist coverage, so that the absence of a written rejection leaves uninsured motorist provisions in effect as part of the excess coverage as a matter of law.[3]

The plaintiff in this case takes the position that uninsured motorist coverage is required in the excess liability policy by virtue of the language contained in 36 O.S. 1981 § 3636(A), which states:[4]

No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the [uninsured motorist] coverage described in subsection (B) of this section.

The defendant argues that an excess liability policy is not the type of policy intended to be covered by this legislation.

This Court has stated that the intent of the uninsured motorist legislation is to afford to one insured under his own liability insurance policy the same protection in the event he is injured by an uninsured motorist as he would have had if the negligent motorist had carried liability insurance.[5] In subsection (B) of section 3636, it is provided that the uninsured motorist coverage provided as a part of a liability policy shall not be less than that required under 47 O.S. 1981 § 7-204,[6] with the insured to have the option to purchase increased limits of liability not to exceed the limits provided for bodily injury liability under the policy. Section 7-204 sets the minimum limits of liability coverage required to be carried by all owners of vehicles registered in the State of Oklahoma.[7]

The purpose of the uninsured motorist provision, when viewed in light of the requirement that it provide minimum standards of protection, is that it place the insured in the same position he would have been in if the negligent uninsured motorist had complied with Oklahoma laws concerning financial responsibility. To find it applicable to supplemental liability policies, as argued by plaintiff as her interpretation of the "[n]o policy insuring against loss ..." language, would place one injured by an uninsured motorist in the same position as if the uninsured motorist had carried the same liability coverage as the injured party.[8]

**3.** 36 O.S. 1981 § 3636(F), mandates that if an insured desires to reject the required uninsured motorist coverage the rejection must be made in writing.

**4.** *Plaintiff relies* upon an unpublished order and judgment, *Crawford v. General Assurance Services, Ltd.*, No. 85-1258 (10th Cir., March 17, 1986) for support for her position. In that case the Tenth Circuit affirmed a District Judge's interpretation of 36 O.S. 1981 § 3636. We have examined the rationale used to arrive at that interpretation and have rejected it.

**5.** *Babcock v. Adkins*, 695 P.2d 1340, 1343 (Okla. 1984); *Biggs v. State Farm Mutual Automobile Ins. Co.*, 569 P.2d 430, 433 (Okla.1977).

**6.** 47 O.S. 1981 § 7-204, provides:

(a) No policy or bond shall be effective under Section 7-203 of this title unless issued by an insurance company or surety company authorized to do business in this state, except as provided in subdivision (b) of this section, nor unless such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than Ten Thousand Dollars ($10,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than Twenty Thousand Dollars ($20,000.00) because of bodily injury to or death of two or more persons in any one accident, and if the accident has resulted in injury to or destruction of property to a limit of not less than Ten Thousand Dollars ($10,000.00) because of injury to or destruction of property of others in any one accident.

**7.** See 47 O.S.Supp. 1982 § 7-601(A)(1).

**8.** The result we reach here today should not be seen as in any way modifying this Court's statements as to the allowance of stacking of primary liability insurance policies. We have found stacking to be required as necessary so that an insured is given the benefit of each and every contract of primary liability insurance he has bargained and paid for. See e.g. *Babcock v. Adkins*, 695 P.2d at 1342. Here we only deal with the question of the types of insurance policy to which 36 O.S. 1981 § 3636, applies. In finding that section 3636 applies to primary

■ Regardless of plaintiff's argument concerning the literal import of the "[n]o policy" language contained at 36 O.S. 1981 § 3636(A), this Court's prime duty is to derive the intent of the legislation. Where that intent is plainly discernible from the provisions of the statute considered as a whole, that intent must prevail over the literal import of the words used.[9] Where it appears that the statute's purpose has been served, the statute's mandate is satisfied at that point.[10]

We note that the title of House Bill No. 802 from which § 3636 was codified in 1968, provided as follows:

An Act relating to insurance; requiring that an "uninsured motorist clause," be contained in every *automobile liability insurance policy;* prescribing the limits of liability of such coverage; providing for an insolvency clause; providing exceptions; defining terms; establishing an effective date for this Act; directing codification; providing for severability of the Act; and repealing conflicting laws." (emphasis ours)

We find the legislative intent to be clear in this case. The uninsured motorist provisions apply to all automobile liability insurance policies (or motor vehicle liability policies as defined in 47 O.S. § 7–324)[11] but not to "umbrella" policies such as First State wrote here to insure only against catastrophic losses in excess of one million dollars arising from any phase of the company's operations.

We therefore find that the mandate of 36 O.S. 1981 § 3636, is satisfied by its application to primary policies insuring against liability arising out of the ownership, maintenance or use of a motor vehicle. This result, and the distinction inherent in the legislation's aim of providing minimum coverage is demonstrated from the results reached in other jurisdictions where the same question has been considered. Courts in Delaware[12] and Illinois,[13] considering uninsured motorist statutes containing the same "[n]o policy" language as contained in Oklahoma's statute, concluded that the legislative intent of providing protection against uninsured motorists was fully met by application to primary liability policies. Application of the provisions to supplemental or excess policies was considered to be beyond the intent of the legislation. In both cases the statutes under consideration provided that the amount of uninsured motorist coverage be commensurate with the limits of liability required under the state financial responsibility laws. The Supreme Court of Louisiana reached a contrary result on the basis that Louisiana statutes required that uninsured motorist coverage in an amount not less than the limits of the policy be provided with all policies insuring against automobile liability.[14] In reaching this result the Louisiana court acknowledged the differ-

liability policies insuring against liability arising from ownership, maintenance or operation of an automobile it is apparent that the statute requires each such policy to have the required provisions as a part of the contract as a matter of law. A party would then have the right to the benefit of the provisions of each such contract into which he has entered.

cy' of liability insurance, certified as provided in Section 7–321 or Section 7–322 of this title as proof of financial responsibility for the future, and issued, except as otherwise provided in Section 7–322 of this title, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

**9.** *Keck v. Oklahoma Tax Comm.,* 188 Okla. 257, 108 P.2d 162 (1940).

**10.** *Barnes v. Transok Pipeline Co.,* 549 P.2d 819 (Okla.1976).

**11.** 47 O.S. § 7–324 'Motor Vehicle Policy' Defined.
    (a) Certification. A 'motor vehicle liability policy' as the term is used in this title shall mean an 'owner's policy' or an 'operator's poli-

**12.** *O'Hanlon v. Hartford Accident and Indemnity Co.,* 639 F.2d 1019 (3rd Cir.1981), construing 10 Del.Code tit. 18 § 3902.

**13.** *Hartbarger v. Country Mutual Ins. Co.,* 107 Ill.App.3d 391, 63 Ill.Dec. 42, 437 N.E.2d 691 (1982), construing Ill.Rev.Stat. 1979, ch. 73, par. 755a.

**14.** *Southern American Ins. Co. v. Dobson,* 441 So.2d 1185 (La.1983) (opinion on rehearing).

ence between its statutory scheme and those of other states with provisions similar to Oklahoma's, stating: [15]

> As previously noted . . ., the uninsured motorist statutes of Alabama, Delaware, New York and Illinois require only that uninsured motorist coverage be provided in the minimum amounts required by law. Courts in those states have accordingly reached a different conclusion under those statutes than the one we reach today under ours. The different statutory language compels a contrary inference to the one we draw today with regard to the Louisiana statute. Under those statutes, the legislative purpose is satisfied when the victim is compensated to the same extent as if he had been struck by a driver who had complied with the minimum coverage requirements of insurance mandated by law in the respective jurisdictions. The language of the Louisiana statute is different, and so is the policy behind it. (footnotes omitted)

■ Our answer to the first question posed is that the excess coverage in a comprehensive public liability policy is beyond the contemplation, scope and intent of 36 O.S. 1981 § 3636, which we find to be limited in application to policies insuring against primary liability,[16] and therefore is not deemed to have provided uninsured motorist coverage in this situation as a result of the carrier's failure to obtain a written rejection of such coverage.

**15.** 441 So.2d at 1191.

**16.** We additionally note that the purpose of the umbrella liability policy here was at most tangentially related to automobile liability. In contracting for umbrella liability coverage the insured sought protection from catastrophic liability arising from any of the varied aspects of its business operations. The purpose of such a contract is protection against liability on the part of the insured. As the risk of the occurrence of such catastrophic liability is a risk of smaller magnitude, the premiums collected for such insurance generally reflect the lesser risk.

In contrast to the umbrella liability policy's purpose of covering divers liability claims arising against the insured, uninsured motorist provisions give rise to liability on the part of the insurer in the absence of liability on the part of

As the second question posed is dependent upon an answer finding liability on the part of the excess liability policy carrier, we do not address the second question.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, HARGRAVE, OPALA, KAUGER and SUMMERS, JJ., concur.

ALMA WILSON, J., dissents.

ALMA WILSON, Justice, dissenting:

Title 36 O.S. 1981 § 3636(F) mandates that if an insured desires to reject the required uninsured motorist coverage, the rejection must be made in writing. The statute affords no distinction between primary liability policies and secondary, excess, or "umbrella" policies. Had the legislature intended to exclude such policies from the statutory application, it could have done so. To the contrary, the statutory directive precisely states:

> "(A) *No policy* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be issued, delivered, renewed, or extended in this state* with respect to a motor vehicle registered or principally garaged in this state *unless the policy includes the [uninsured motorist] coverage* described in subsection (B) of this section." [Emphasis added.]

I am of the view that "no policy" means "no policy". This Court has traditionally

the insured. The uninsured motorist provisions, however, are intended to cover only those situations where liability arises out of the ownership, maintenance or operation of a motor vehicle. Such situations are within the area of policies offering primary automobile coverage. Because of this difference in the basic nature of umbrella liability coverage and primary automobile liability policies, it has been concluded that umbrella liability coverage is beyond the scope of uninsured motorist provisions. *Trinity Universal Ins. Co. v. Metzger*, 360 So.2d 960 (Ala.1978); *Matarasso v. Continental Casualty Co.*, 82 A.D.2d 861, 440 N.Y.S.2d 40 (1981), affirmed 451 N.Y.S.2d 703. We find the reasoning of these cases applicable as to the intent of 36 O.S. 1981 § 3636.

held that an unambiguous statute should be construed in a literal way giving words their ordinary, commonly understood meaning. *Gilbert Central Corp. v. State*, 716 P.2d 654 (Okl.1986); *Matter of Phillips Petroleum Company*, 652 P.2d 283 (Okl. 1982); *Cave Springs Public School District I-30 of Adair County v. Blair*, 613 P.2d 1046 (Okl.1980); *Cavett v. Geary Board of Education*, 587 P.2d 991 (Okl. 1978). It is hard to imagine words plainer than "no policy ... shall be issued". Accordingly, under the provisions of *our own statute,* there is neither reason, nor room, for statutory construction. Our own uninsured motorist statute differs from those of other jurisdictions in important particulars and therefore cannot be governed by other state statutes which are inherently distinguishable.

Unless, or until, our legislature prescribes an exception to the "no policy" mandate of 36 O.S. 1981 § 3636(F), I am impelled to hold inviolate its literal import.