George D. HICKS and Molly Hicks, as Father and Mother and Next of Kin of Monroe Hicks, Deceased, and Lahoma Hicks, Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Foreign Corporation, Appellee.

No. 49713.

Supreme Court of Oklahoma.

July 26, 1977.

Rehearing Denied Sept. 26, 1977.

Robert T. Keel, Oklahoma City, for appellants.

Calvin W. Hendrickson, Oklahoma City, for appellee; Pierce, Couch, Hendrickson & Short, Oklahoma City, of counsel.

BARNES, Justice:

This case involves an appeal by Appellants from the Trial Court's sustention of Appellee's Motion for Summary Judgment. The parties agree as to the essential facts.

Prior to November, 1968, Appellant, George D. Hicks, carried automobile liability insurance with State Farm Mutual Automobile Insurance Company, hereinafter called "Appellee", under Policy No. 716–059–36C, on a 1965 Ford. In November, 1968, Appellant Hicks received in the mail from Appellee, along with his automobile insurance premium notice, a form entitled "ENDORSEMENT—UNINSURED MOTORIST AUTOMOBILE COVERAGE", and in parenthesis underneath this language: "Applies only to State Farm Mutual Automobile Liability Policies". This proposed "endorsement" was to be attached to Appellant's policy and would have afforded him uninsured motorist insurance. However, the offer was rejected by Appellant Hicks.

At the time of the rejection Appellant was a 44-year-old full blood Creek Indian, with a seventh grade education, who could read and write English. Appellant read the endorsement form, but was allegedly unable to comprehend the meaning. He signed and returned the form to Appellee. This act was done in Appellant's home, without a representative of Appellee to explain Appellant's statutory right to the coverage, or the scope and significance of such coverage.

In 1972 Appellant traded his 1965 Ford for a 1969 Ford and was issued a new policy by Appellee. Comprehensive and collision coverages were added to the policy and Appellant's insurance premium rate was increased. Appellee did not obtain an uninsured motorist coverage rejection, relying on the rejection obtained in 1968.

In May, 1973, Monroe Hicks, son of Appellant, was killed while driving Appellant's car, and his sister, Lahoma Hicks, a passenger, was severely injured by the negligence of an uninsured motorist. Appellants presented a claim under their uninsured motorist coverage, which was denied by Appellee. Appellee based its denial on the rejection form obtained in 1968.

Appellants, George Hicks and Molly Hicks, father and mother of Monroe Hicks, deceased, and Lahoma Hicks, brought suit against the uninsured motorist and obtained a judgment in the sum of $20,000.00. Appellants then filed this suit against Appellee for collection of that judgment.

Appellee answered Appellants' petition, alleging that Appellant, George Hicks, was given an opportunity to purchase uninsured motorist coverage, but rejected it. Appellant, George Hicks, filed a reply denying that he knowingly or voluntarily rejected the coverage. Appellee then filed its Motion for Summary Judgment, alleging that since Appellant had admittedly signed an uninsured motorist rejection form in 1968, there was no uninsured motorist coverage available for the 1973 accident and no question of fact for a jury.

Appellant contends by operation of law uninsured motorist coverage was automatically included with the policy issued in 1972. Appellant, by affidavit and deposition, denied knowingly and voluntarily rejecting uninsured motorist coverage. He argues that whether the rejection was knowingly and voluntarily given is a question of fact for a jury to determine and that the case should not have been disposed of by granting summary judgment for Appellee.

The Trial Court specifically found that Appellee properly submitted to Appellant, George Hicks, the opportunity to have uninsured motorist coverage in compliance with 36 O.S.1971, § 3636; that Appellant rejected the offered uninsured motorist coverage; that Appellant renewed his insurance coverage with Appellee and did not thereafter request uninsured motorist coverage; and that under 36 O.S.1971, § 3636, as a matter of law, there was no material question of fact, and, thus, Appellee's Motion for Summary Judgment should be sustained.

Title 36 O.S.1971, § 3636, provides in part:

"(A) No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection (B) of this section.

\*   \*   \*   \*   \*   \*

"(F) The named insured shall have the right to reject such uninsured motorist coverage in writing, and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer."

In compliance with the mandate of this statute, Appellee sent to Appellant Hicks the aforementioned proposed endorsement to his then existing policy, which, if accepted by Appellant, would give him "uninsured motorist" coverage by the payment of a small additional premium charge. The instrument was captioned in large lettering: "ENDORSEMENT—UNINSURED MOTORIST AUTOMOBILE COVERAGE". Below the heading appeared the following:

"The Oklahoma Legislature has enacted legislation requiring all automobile liability insurance policies in the State to provide Uninsured Automobile Coverage (Coverage U) *unless rejected in writing by the policyholder.* This legislation also broadens the protection provided by Uninsured Automobile Coverage.

*"This coverage protects you in the event of bodily injury liability damages sustained by you, your family, or your passengers* in an accident for which an unidentified or uninsured driver is legally liable. \* \* \*

"In accordance with the new law, State Farm is providing Uninsured Automobile Coverage for all Oklahoma auto liability policies. If you are not now carrying this coverage, your enclosed premium notice states: 'Coverage U Added' and indicates the limits of liability. The semi-annual premium for this additional coverage is $3.00 for $10,000/$20,000 limits or $2.70 for $5,000/$10,000 limits and is included in the total Amount Due. *Payment of the total Amount Due automatically adds Coverage U to your automobile policy, effective with your policy's renewal date."* (Emphasis added)

In the last paragraph of the explanatory statement the following language appears:

"If you presently do not have Coverage U, *State Farm strongly recommends that you accept this important additional protection.*

\*     \*     \*     \*     \*     \*

"If You Want This
*IMPORTANT COVERAGE*   .   .   .

Pay the entire AMOUNT DUE shown on your Premium Notice and place this endorsement with your policy. *This will automatically make Uninsured Automobile Coverage a part of your auto liability policy.*" (Emphasis added)

The premium notice above referred to was in the amount of $27.50 and was contained in the envelope with the proposed "uninsured motorist" endorsement.

Since 36 O.S.1971, § 3636, provides the insured shall have the right to reject "uninsured motorist" coverage, the proposed endorsement then stated:

"If You Do Not Want
UNINSURED AUTOMOBILE COVERAGE   .   .   .

Please follow these three steps:

1. Complete and sign the Notice of Rejection (at the right), and   .   .   .
2. Subtract $2.70 from the total Amount Due on the enclosed premium notice if you have $5,000/$10,000 Bodily Injury Liability limits;   $3.00 if you carry $10,000/$20,000 Bodily Injury Liability limits;
3. Return the amount that is left as your premium payment enclosing your signed Notice of Rejection."

The Notice of Rejection contained this language:

"NOTICE OF REJECTION
UNINSURED MOTORIST COVERAGE

"The undersigned, an insured named in the policy, hereby rejects the provisions covering damage caused by an uninsured motor vehicle under a policy of bodily injury liability insurance on the following described car:   \*   \*   \*."

From our review, we think the provision to delete uninsured motorist coverage was conspicuous to the Appellant insured, to whom it was tendered for acceptance; that the language of the endorsement clearly and specifically apprised the insured of the right he was relinquishing. The policy defined the disputed coverage in language plain enough to enable the insured to comprehend the waiver and its meaning.

■ Appellant argues he did not voluntarily and knowingly reject uninsured motorist coverage, relying heavily on *Johnson v. Concord Mutual Ins. Co.*, 450 Pa. 614, 300 A.2d 61 (1973). In *Johnson, supra*, a 69-year-old insured with a fourth grade education met with his insurance agent and signed a printed form which contained a purported waiver of uninsured motorist coverage. The insured was required to sign the form in two places, one below the printed text of the application and the other below the waiver which read in fine print, "I HEREBY STATE THAT I DO NOT DESIRE UNINSURED MOTORIST COVERAGE IN MY AUTO LIABILITY POLICY". The Pennsylvania Supreme Court found the single line on the carrier's printed form insufficient on its face to constitute a valid rejection and that the insured had not met its burden of proving the insured intelligently and knowingly waived uninsured motorist coverage. The Court indicated the claimed waiver provision was not conspicuous, plain, and clear and did not contain language which would clearly apprise the insured of the nature of the right he was relinquishing. The Court further said:

"\*   \*   \*   Rather, the sixteen word, single line provision at the extreme end of the binder-application form merely reads in fine print that the insured does not desire the protection. No explanation of the coverage (or two dollar cost) appears within the rejection form prepared by the insurance carrier and printed at the foot of the application. It is evident that this claimed rejection is not affirmatively expressed in writing by the insured.   \*   \*   \*"

We find the *Johnson case, supra*, distinguishable from the case at bar for two reasons: (1) The Johnson policy did not contain the strong recommendation that the

insured accept the tendered uninsured motorist coverage; and (2) failed to provide an extensive explanatory statement as to what the insured was rejecting. Furthermore, in the instant case we find an overt act by Appellant Hicks in following step No. 2 by subtracting $3.00 from the $27.50, as shown on the premium notice, thereby signifying that he did not want uninsured automobile coverage. Though Appellant makes the formal allegation in his Petition that he was without understanding, in his deposition he admitted he signed the rejection, dated it, changed the description of his automobile, and, in conformity with an intent to reject the coverage, mailed the proposed endorsement and rejection back to the Appellee company.

The rule in Oklahoma was stated in the early case of *All American Bus Lines, Inc. v. Schuster*, 199 Okl. 628, 189 P.2d 412 (1948), as follows:

"Where a party signs a written agreement, in the absence of false representation or fraud, he is bound by it, although ignorant of its contents."

It is to be noted in the instant case that there is no evidence of fraud or over-reaching on the part of the insurer. We find nothing to indicate Appellant's waiver of "uninsured motorist" coverage was not knowingly and intelligently made.

Appellant next contends that the policy issued in 1972 was a new policy, not a renewal of the 1968 policy, so that the 1968 rejection of uninsured motorist coverage would be inapplicable to the 1972 policy.

In support of this proposition, Appellant relies on cases from other jurisdictions, including *Russell v. State Farm Mutual Automobile Ins. Co.*, 47 Mich.App. 677, 209 N.W.2d 815 (1973), and *Burch v. Wargo*, 378 Mich. 200, 144 N.W.2d 342 (1966), urging that the subject matter of the policy was entirely different in the 1968 policy in that a 1965 Ford was insured and in 1972 a 1969 Ford was insured; that the 1972 coverage was extended to include death and disability coverage, and that the premium was increased in 1972.

We find this argument of Appellant unpersuasive. Appellant's deposition reflects the following testimony when questioned by Appellee's counsel:

"Q (By Mr. Hendrickson) Since you signed this notice of rejection of uninsured automobile coverage on November 18, 1968, have you ever signed another rejection of any kind?

"A No, sir.

"Q Have you filled out a *new application* for an insurance policy since this time?

"A No.

"Q I'm talking about with State Farm, not with any other company; I'm talking about with State Farm?

"A No." (Emphasis added)

Thus, it appears the policy issued in 1972 was a renewal policy and not a new policy, as argued by Appellant. We think the language in 36 O.S.1971, § 3636(F), directly applicable:

"(F) The named insured shall have the right to reject such uninsured motorist coverage in writing, and except that *unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him* by the same insurer." (Emphasis added)

Here, the named insured, Appellant Hicks, failed to request such coverage in writing in order to establish his right to uninsured motorist coverage, and under the above statute such coverage need not be provided in a renewal policy when earlier rejected in a policy previously issued.

Appellant's final proposition states there are questions of fact existing in this case and that Appellee's Motion for Summary Judgment should be overruled.

See *Brady, Admx. v. Universal Underwriters Insurance Group*, 370 Ohio App.2d 107, 307 N.E.2d 548 (1973), where that Court said in approving a Motion to Dismiss in lieu of a summary judgment:

"In the case before this Court there is no question that the named insured actually signed the rejection form that was printed on the insurance application.

"There is no issue that the insured was absent his faculties or that he could not read or write.

"Further, there is no issue that the insured signed such rejection under duress, or conditions showing undue influence. Neither is there a claim of misrepresentation.

\*　　\*　　\*　　\*　　\*　　\*

"It is the view of the majority herein that where the facts show that there has been an express rejection of uninsured motorist coverage, . . . there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

We agree with the Trial Court that this was not a new policy, but was a renewal of an existing policy, and that as a matter of law the Appellee was entitled to Motion for Summary Judgment.

Affirmed.

LAVENDER, V. C. J., and WILLIAMS, IRWIN and BERRY, JJ., concur.

HODGES, C. J., and SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, dissenting.

I respectfully dissent. I do not agree with the majority that the insurance policy issued in 1972 covering Mr. Hicks' 1969 Ford, was a "renewal" of the 1968 policy covering his 1965 Ford. In my opinion the 1972 policy was a new and distinct insurance policy which was unaffected by Mr. Hicks' rejection of uninsured motorist coverage in the 1968 policy.

Our uninsured motorist statute, 36 O.S. 3636(A) provides that no liability policy shall be issued without uninsured motorist coverage, except that 3636(F) gives the named insured the right to reject such coverage in writing. § 3636(F) provides:

"The named insured shall have the right to reject such uninsured motorist cover-

age in writing, and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a *renewal policy* where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." (emphasis added)

The exception is clearly limited to an actual renewal of the original insurance policy.

This was a new contract. It involved a different subject matter, the types of coverage were different and the premiums were for a different amount.

I am persuaded by the reasoning of *Russell v. State Farm Mutual Automobile Ins. Co.*, 47 Mich.App. 677, 209 N.W.2d 815 (1973) upon which appellants rely. In *Russell, supra*, the insured claimed a third policy issued to him by State Farm was a renewal of the first policy issued to him which did not have a subrogation clause on medical coverage. The third policy did contain a subrogation clause. The Michigan court noted that aside from a lapse of coverage, the subject matter of the two policies was entirely different. The first policy insured a 1964 car and the third, a 1968 vehicle.

The court stated:

"A renewal implies a fixed contract and the expiration of the original coverage. *Attorney General, ex rel. Comm. of Ins. v. Lapeer Farmers Mutual Fire Ins. Assn.*, 297 Mich. 174, 297 N.W. 232 (1941). In the case at bar, there was not a fixed contract with respect to the first and third policies of insurance. With respect to these policies, the coverage, the premiums and the subject matter were different. Thus, there certainly was not a fixed contract in this case."

Contracts of insurance are controlled by the same principles of law that are applicable to any other contract. I am not aware of any authority in the law of contracts which supports the notion that once parties have entered into a contract regarding subject matter "X", a subsequent and separate

contract between them regarding subject matter "Y" is a renewal of the first contract.

Our mandatory uninsured motorist statute is remedial in nature. Its purpose is to provide protection against injuries suffered by reason of uninsured and financially irresponsible motorists, and it must be liberally construed to effect its intended purpose. See, e. g., *Van Hoozer v. Farmer's Ins. Exchange*, 219 Kan. 595, 549 P.2d 1354 (1976); *Chavez v. State Farm Mutual Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975). *See, also, Annot. Uninsured Motorist Coverage Waiver*, 55 A.L.R.3d 216.

Under the majority decision, once an insured rejects uninsured motorist coverage, *ANY* subsequent policy issued by the insurer need not comply with the mandatory requirements of 36 O.S.1971, § 3636, for it will merely be a renewal of the original policy. This will be so in spite of the fact that it is a new and distinct policy which insures an entirely different subject matter. I believe this result is against the clear public policy of the State of Oklahoma and is also contrary to basic rules of contract law.

I would reverse the judgment of the trial court.

I am authorized to state that Chief Justice HODGES joins me in this Dissent.

DOOLIN, Justice, dissenting:

I not only agree with the opinions and statements made by Justice Simms in his dissent but would dissent also on the grounds that the appellants by their pleadings have raised a question of fact, as to whether or not deceased, knowingly and voluntarily rejected coverage on the "subsequent" policy. To decide this question by summary judgment is to require the opponent of the motion to carry the burden of proof.