Travis L. MANN, A Minor, By and Through His Father and Next Friend, Donald K. MANN; and Donald K. MANN, Individually, Appellees/Counter–Appellants,

v.

FARMERS INSURANCE COMPANY, INC., d/b/a Truck Insurance Exchange, and Truck Underwriters Association, A Corporation, Appellants/Counter–Appellees.

No. 64977.

Supreme Court of Oklahoma.

May 10, 1988.

Rehearing Denied Sept. 13, 1988.

Duke Halley, Woodward, for appellees/counter-appellants.

John F. Percival, Oklahoma City, for appellants/counter-appellees.

LAVENDER, Justice:

At some time during or prior to the year 1972 appellee Donald K. Mann obtained a commercial fleet liability insurance policy from appellant Truck Insurance Exchange covering all of the vehicles in the fleet and such vehicles as were from time to time added to the policy. This policy provided a $100,000 per person limit on liability and a $5,000 per person limit on liability under the uninsured motorist provisions of the policy.

On March 16, 1976, 1976 Okla.Sess. Laws, Ch. 28 § 1 went into effect as 36 O.S.Supp.1976 § 3636. This statutory amendment of the previous form of section 3636 added the provision in subsection (C) to make uninsured motorist coverage applicable to the situation where the tort-feasor was underinsured. The 1976 amendment also changed the language of subsection (B) of the previous form of the statute from:

> Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of 47 O.S.1961, § 204, as the same may be hereafter amended; provided, however, that larger amounts of liability may be offered and purchased if desired.

to: [1]

> Coverage shall be not less than the amounts or limits prescribed for bodily

injury or death for a policy meeting the requirements of Section 7–204 of Title 47, Oklahoma Statutes, as the same may be hereafter amended; *provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured....* (emphasis added)

Appellants sent the following notice to appellee Donald K. Mann approximately thirty (30) days prior to the renewal date of the fleet liability insurance policy during the year 1976:

Dear Policyholder:

The Oklahoma Legislature recently passed a law which requires an insurance company to offer to provide Uninsured Motorists coverage with increased limits of liability.

The term "Uninsured Motor Vehicle" has been extended to include an insured motor vehicle whose liability insurer for any reason either cannot or is not legally required to afford at least the per person coverage limits with respect to the legal liability of its insured, applicable to any injured party under any uninsured motorists coverage covering such injured party.

The endorsement on the reverse side amends the Uninsured Motorists provisions of the policy to comply with the new law.

If you wish to increase your Uninsured Motorist limits of liability, please contact your agent. You may not select higher limits than your policy's Bodily Injury Liability Limits.

FARMERS INSURANCE GROUP

[reverse side]

AMENDATORY UNINSURED
MOTORISTS—OKLAHOMA

This endorsement becomes a part of your policy effective from its date of issue unless the policy is being renewed, in which event this endorsement becomes effective with the date shown on the enclosed renewal notice.

---

1. Quoted in full, infra.

Uninsured Motorists is amended as follows:

1) The Limits of Liability are amended to provide:

The limit of the Company's liability, unless otherwise stated in the Declarations, shall be the limits of bodily injury liability required by the motor vehicle financial responsibility law of the State of Oklahoma.

2) The definition of "Uninsured Motor Vehicle" shall include an insured motor vehicle whose liability insurer for any reason either cannot or is not legally required to afford at least the per person coverage limits with respect to the legal liability of its insured, applicable to any injured party under any uninsured motorists coverage covering such injured party.

As of January 1, 1981, 1980 Okla.Sess. Laws, ch. 235 § 2 became effective, increasing the limits of required liability insurance from $5,000 per person to $10,000 per person.[2] By the terms of the fleet liability insurance policy this increase became immediately effective as to the uninsured motorist provisions of that policy.

In April of 1981 Donald K. Mann requested that the liability limits of the fleet liability insurance policy be raised to $250,000 per person for bodily injury liability. At the same time appellee also purchased a $1,000,000 "umbrella" liability policy from appellant Truck Underwriters Association. In June of this same year Donald K. Mann added to the coverage of the fleet policy a 1980 pickup truck purchased by, and titled in the name of, Travis L. Mann.

Subsequently, appellee Travis L. Mann, as a passenger on a motorcycle, was involved in an accident involving the motorcycle and a pickup. As a result of this accident Travis L. Mann suffered serious personal injuries including multiple fractures of his ankle. The driver of the pickup settled out of court for the limits of the driver's liability insurance policy. Appellees then brought action against the driver of the motorcycle and against appellant Farmers Insurance Company, Inc., d/b/a Truck Insurance Exchange, on the uninsured motorist provisions of the fleet liability insurance policy, and against appellant Truck Underwriters Association on the "umbrella" liability policy. At the time of the accident there were nine (9) vehicles, including Travis' pickup, insured under the fleet liability policy.

A jury trial was held to establish the liability of the driver of the motorcycle and the extent of damages suffered by appellees. The jury returned a verdict holding the driver liable and awarding $158,000 in damages, plus costs and prejudgment interest, to Travis and $7,000 plus costs and interest to Donald K. Mann. Following entry of judgment on this verdict both appellees and appellants moved for summary judgment as to the extent of liability of appellants under the insurance policies.

Appellants argued on motion for summary judgment that the uninsured motorist provisions of the fleet liability policy provided a maximum coverage of $10,000 applicable to Travis' injuries. Appellants also argued that coverage under the fleet policy could not be stacked because Travis' separate ownership of his own vehicle triggered the operation of an exclusionary clause prohibiting stacking.

Appellees argued that the limits of the uninsured motorist provisions of the fleet policy were equal to the liability limits of the policy because appellees had not rejected the higher limits in writing and/or appellants had not made a sufficient offer of uninsured motorist coverage equal to liability limits. Appellees also argued that stacking should be allowed as to the various vehicles covered under the fleet policy because appellants were estopped to claim the separate ownership of Travis' vehicle. Finally, appellees argued that the "umbrella" liability policy should include uninsured motorist coverage as a matter of law because such coverage had not been either offered or rejected in connection with the "umbrella" policy.

The trial court ruled in granting summary judgment: 1) that stacking of coverage

2. Codified as 47 O.S.1981 § 7–204.

under the fleet liability policy was precluded by Travis' separate ownership of his vehicle, citing *Shepard v. Farmers Insurance Co., Inc.;*[3] and 2) that, although appellants' offer of increased limits of uninsured motorist coverage in this case was sufficient, appellants' failure to obtain a written rejection of higher limits of coverage left such higher limits as part of the policy as a matter of law. The trial court found the limit of appellants' liability under the fleet insurance policy to be $250,000.

Appellants filed the present appeal from the trial court's ruling that a rejection in writing must be obtained as to any level of uninsured motorist coverage less than the maximum liability coverage of the relevant policy. Appellees filed a counter-appeal in which they urged as error the trial court's ruling on summary judgment that they were precluded from stacking coverage under the fleet policy. Appellees contend that issues of fact remain disputed as to this question.

### I.

■ The basic tenet of appellants' argument on appeal is that the trial court erroneously construed the terms of 36 O.S. 1981 § 3636 in reaching its conclusion that a written rejection was required to effectuate acceptance of a level of uninsured motorist coverage below the limit of liability of the fleet insurance policy. At issue here are 36 O.S.1981 § 3636(B), which provides:

The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7-204 of Title 47, Oklahoma Statutes, as the same may be hereafter

amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured. The uninsured motorist coverage shall be upon a form approved by the State Board for Property and Casualty Rates as otherwise provided in the Insurance Code and may provide that the parties to the contract shall, upon demand of either, submit their differences to arbitration; provided, that if agreement by arbitration is not reached within three (3) months from date of demand, the insured may sue the tort-feasor.

and 36 O.S.1981 § 3636(F), which provides:

The named insured shall have the right to reject such uninsured motorist coverage in writing, and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

We find merit in appellants' contention that the trial court's construction of these provisions was erroneous. In *Moser v. Liberty Mutual Insurance Co.,*[4] this Court stated:

This Court has stated that the intent of the uninsured motorist legislation is to afford to one insured under his own liability insurance policy the same protection in the event he is injured by an uninsured motorist as he would have had if the negligent motorist had carried liability insurance. In subsection (B) of section 3636, it is provided that the uninsured motorist coverage provided as a part of a liability policy shall not be less than that required under 47 O.S.1981 § 7-204, with the insured to have the option to purchase increased limits of liability not to exceed the limits provided for bodily injury liability under the policy. Section 7-204 sets the minimum limits of liability coverage required to be

**3.** 678 P.2d 250 (Okla.1983).

**4.** 731 P.2d 406, 408 (Okla.1986).

carried by all owners of vehicles registered in the State of Oklahoma.

The purpose of the uninsured motorist provision, when viewed in light of the requirement that it provide minimum standards of protection, is that it place the insured in the same position he would have been in if the negligent uninsured motorist had complied with Oklahoma laws concerning financial responsibility. To find it applicable to supplemental liability policies, as argued by plaintiff as her interpretation of the "[n]o policy insuring against loss ..." language, would place one injured by an uninsured motorist in the same position as if the uninsured motorist had carried the same liability coverage as the injured party. (footnotes omitted)

In *Moser* this Court dealt with the question of the applicability of the requirements of 36 O.S.1981 § 3636 to supplemental or "umbrella" liability policies.[5] The reasoning, however, is clearly applicable to the present case involving a primary policy purchased by the insured with liability limits in excess of the minimum required under the financial responsibility laws. Under the construction adopted by the trial court, failure of the insurer to obtain a written rejection as to the highest available limits would result in those limits being written into the uninsured motorist provisions of the insured's policy. This would result in the insured being placed in the

position as though an uninsured motorist, with whom the insured was involved in an accident, had purchased the same liability policy as that purchased by the insured. As found in *Moser* this result goes beyond the mandate of 36 O.S.1981 § 3636.

■ Appellees have cited cases which they contend support the trial court's result. We do not find these citations persuasive. *O'Hanlon v. Hartford Accident and Indemnity Co.*,[6] cited in *Moser*,[7] simply did not deal with the question of a insurer's liability for uninsured motorist coverage in the absence of a written rejection, but only dealt with issues regarding the applicability of uninsured motorist provisions to "umbrella" or excess insurance policies. Appellees also cite *Landry v. Government Employees Insurance Co.*,[8] a Louisiana Court of Appeals decision. The difference between Oklahoma law and Louisiana law relative to the intent reflected in our respective uninsured motorist provisions was discussed in *Moser*.[9] The cases of *Arms v. State Farm Mutual Automobile Ins. Co.*,[10] and *Abate v. Pioneer Mutual Casualty Co.*,[11] dealt with instances were the insurers failed to offer uninsured motorist coverage at all (*Abate*) or failed to offer coverage up to the primary liability policy limits (*Arms*).[12] In the present case appellees were notified of the availability of higher levels of uninsured motorist coverage and were informed to contact their

---

5. Appellees argue in their brief on appeal that the failure to offer or obtain rejection of uninsured motorist coverage in connection with the "umbrella" policy from appellant Truck Underwriters Association left uninsured coverage as part of that policy as a matter of law. This issue was not ruled on by the trial court and was not raised in appellees' counter-petition in error, nevertheless it was specifically rejected in *Moser*, supra.

6. 639 F.2d 1019 (3rd Cir.1981).

7. 731 P.2d at 409, footnote 12.

8. 390 So.2d 1385 (La.App.1980).

9. 731 P.2d at 409, 410.

10. 465 A.2d 360 (Del.Super.1983) affirmed as *State Farm Mutual Automobile Ins. Co. v. Arms*, 477 A.2d 1060 (Del.1984).

11. 22 Ohio St.2d 161, 258 N.E.2d 429 (1970).

12. Appellees also raise the contention that various changes in the fleet liability policy constituted new insurance policies for which new offers of uninsured motorist coverage were required. This contention was relevant to the court's decision in *State Farm Mutual v. Arms*, supra note 11. This Court has accepted the view of the court in *Arms* on this point but made that holding prospective in application to insurance claims arising after December 10, 1987, the date of mandate in *Beauchamp v. Southwestern National Ins. Co.*, 746 P.2d 673, (Okla.1987). Prior to that date interpretation is ruled by *Hicks v. State Farm Mutual Auto Ins. Co.*, 568 P.2d 629 (Okla.1977), which held that the addition and deletion of different automobiles and of changes in coverage under a policy did not constitute a new policy in the absence of an application for a new policy.

insurance agent if they wished such coverage. There is no contention raised that appellees did not accept uninsured motorist coverage.

■ Appellees do appear to contest the sufficiency of the notice previously quoted in full. This argument however is unclear. It does not appear to challenge the clarity of the notice as to whether coverage was available up to policy limits but rather whether the notice, when read in conjunction with the schedule of coverage, indicated that the increase in coverage was automatically effective. The trial court here ruled on the sufficiency of the notice as a matter of law. We do not find appellees' argument persuasive as to the establishment of error in the trial court's ruling on this point.

## II.

■ In their briefs in support of their cross-petition in error, appellees raise the argument that the trial court erred in holding that stacking of the coverages within the fleet liability policy was precluded by Travis' separate ownership of his own vehicle. Both the trial court and appellants have relied on *Shepard v. Farmers Insurance Co., Inc.*,[13] as supporting the conclusion that stacking of benefits is legally impermissible under the uncontroverted facts, i.e. that Travis did own his own vehicle. However, this Court stated in *Shepard*:[14]

> *Keel* and its progeny required that a claimant be permitted to recover upon multiple policies for which multiple uninsured motorist premiums had been paid. However, claimant may not recover unless he or she is an "insured", and the terms of the contract determine who is insured thereunder. Neither the Oklahoma statute nor the relevant cases dictate mandatory classes of insureds or set mandatory limits of coverage. As indicated by *Keel* and *Richardson*, one may have recourse to multiple automobile insurance policies, but in order to recover, the claimant must first be an insured

under each policy. Contract language which excludes a resident of the named insured's household who owns an automobile from coverage as an insured under the uninsured motorist provisions of the policy contravenes neither the express language of the Oklahoma Uninsured Motorist Act nor its underlying policy of providing coverage for tortious conduct which would otherwise go uncompensated. Such language in fact triggers operation of our mandatory insurance statute and clearly places the burden of carrying automobile insurance upon automobile owners.

Since uninsured motorist coverage is mandatory unless waived, the presumption exists that one who owns an automobile has recourse to some uninsured motorist benefits. The amount of coverage available depends upon and is limited to the contract between the parties. . . .

In the present case appellants have conceded that Travis L. Mann is an insured although he has separate ownership of his own vehicle. Presumably this coverage comes as a result of insurance on that vehicle. Yet the only policy which appears to cover the vehicle owned by Travis is the fleet liability policy issued to Donald K. Mann. That policy provides for multiple uninsured motorist coverage for which premiums have been paid.

Because the basis for the presumption engaged in in *Shepard* is not present here, in that the separately owned automobile here is insured under the very policy which appellees claim is subject to stacking, we agree with appellees' contention that it was error for the trial court to rely on *Shepard* as dispositive.

Appellees argue that the question of whether stacking should be allowed under the fleet liability policy in this case is not subject to resolution on motion for summary judgment. Appellees maintain that there are disputed factual considerations as to whether appellants are estopped from relying on the separate ownership of Tra-

---

**13.** Supra, note 3.

**14.** 678 P.2d at 252, 253.

vis' vehicle because of appellants' action in insuring the vehicle under Donald K. Mann's policy. Appellants assert that the question of estoppel was not considered by the trial court.

Because we find error in the trial court's ruling as to the necessity of a written rejection to be effective as to the acceptance of uninsured motorist coverage with limits less than the liability limits of a motor vehicle liability policy, and because of the erroneous reliance on *Shepard v. Farmers Insurance Co., Inc.,* we REVERSE the trial court's ruling on summary judgment.

The cause is REMANDED for further proceedings consistent with the views expressed in this opinion. The trial court's attention is also directed to the case of *State Farm Mutual Automobile Insurance Co. v. Wendt,*[15] handed down subsequent to the trial court's ruling in the present case.

DOOLIN, C.J., HARGRAVE, V.C.J., and SIMMS, OPALA and SUMMERS, JJ., concur.

HODGES, J., concurs in Part II; dissents from Part I.

ALMA WILSON, J., dissents.

KAUGER, J., recused.

ALMA WILSON, Justice, dissenting:

This case raises three issues concerning 36 O.S.1981, § 3636, uninsured motorist coverage. First, where an insured increases the policy limits on his bodily injury motorist coverage, must that insured reject in writing the increased amount of coverage on his uninsured motorist policy? Second, was the notice sent by the insurer which offered to discuss increasing the uninsured motorist coverage sufficient as a matter of law? Third, where a parent adds his minor son's motor vehicle to that parent's policy which insures several other motor vehicles, is the son entitled to stack the policies of all of the vehicles under the uninsured portion of the insurance policies?

The majority opinion holds that a written rejection is not required, that the notice was sufficient as a matter of law to inform the insured that he had a right to an increased uninsured motorist coverage, and that the trial court erroneously relied upon *Shepard v. Farmers Insurance Co.,* 678 P.2d 250 (Okla.1983).

On May 18, 1982, Travis Mann was injured when a pickup truck struck the motorcycle on which he was a passenger. While the claim against the driver of the pickup was settled out of court, the claim against the motorcycle driver was tried resulting in a verdict in favor of Travis Mann for a total of $193,257.81, and a verdict in favor of Donald Mann for a total of $8,562.05, both judgments collecting interest at the rate of fifteen percent per annum. In a separate proceeding, the Manns sued Donald Mann's insurance company alleging that the judgments should be paid from the underinsured coverage of Mr. Mann's policy. Travis Mann, a minor living in the same household as his father, Donald Mann, owned a pickup truck which his father had added to the coverage provided for nine other vehicles. Both appellants and appellees sought summary judgment.

The trial court found that the Manns were not entitled to stack the various motor vehicles covered in the insurance policy under the decision in *Shepard;* that an estoppel question still existed as to the rights of the plaintiff to recover under the policy; that the insurer had not complied with the written rejection requirement of 36 O.S.1981, § 3636; and that the limit of the uninsured motorist policy was $250,000.00. The trial court then awarded judgments in favor of Travis Mann and Donald Mann against the insurer for the amounts awarded the Manns by the jury verdict.

Whether or not Travis Mann is insured is not an issue in this case. The insurer's Brief in Support of Motion for Summary Judgment states in paragraph nine: "Truck Insurance Exchanges [sic] admits liability for the total sum of $10,000.00 being the single person limits on the uninsured motorist coverage applicable to the

15. 708 P.2d 581 (Okla.1985).

1980 Chevrelot [sic] Half–Ton Pickup Truck owned by Travis Mann and specifically endorsed on the fleet policy above referenced." Having determined that the insurer is liable for at least $10,000.00, the next question is whether the policy changes would raise the liability limit on each vehicle.

## I.

Because the insurance policy already provided uninsured motorist coverage in an amount sufficient to satisfy the minimum requirements of law, the insurer argues that the trial court erred by imposing the duty upon insurance companies to obtain a written rejection of uninsured motorist coverage in an amount equal to the bodily injury limits of the policy. I cannot agree with the reasoning of the majority opinion.

Title 36 O.S.1981, § 3636 provides in the second sentence of subsection B that:

Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47, Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured.

The limits for bodily injury at the time of the accident had been increased to $250,000 for an individual, with a maximum limit per accident of $500,000. In a letter to the parties, the trial judge stated that he found the notice requirement, which would offer increased limits of liability to the policyholder, to have been sufficient. However, he found that there was not a written rejection of the higher amount, and that such a written rejection was required by statute. The trial court held that "failure to secure a written rejection of uninsured motorist coverage subjects the insurance company to coverage in the amount of the policy of bodily injury liability limit." The trial court reasoned that the statute provides no other method of verification of compliance.

Subsection F of § 3636 requires that a rejection of coverage be in writing:

The named insured shall have the right to reject such uninsured motorist coverage in writing, and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

The appellees never rejected the uninsured motorist coverage. The appellants admit that the policy provided at least the minimum required by law. The issue before us is one of first impression. Does § 3636 require that when the limits for bodily injury are increased, the policyholder must reject in writing the increased limit on uninsured coverage? Subsection B provides that "increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured." Subsection F provides that the named insured "shall have the right to reject such uninsured motorist coverage in writing." I would hold that subsection F refers to all of subsection B, not just the portion of subsection B requiring that the policy coverage be the minimum required by State law. Because the only method for rejecting any coverage mentioned in subsection B is through a written rejection, the insurer was required to obtain a written rejection.

The majority opinion cites *Moser v. Liberty Mutual Insurance Co.*, 731 P.2d 406 (Okla.1986), and states that the reasoning in that case concerning umbrella liability policies applies equally to the case at bar. The majority opinion reasons that requiring an insurance company to obtain a written rejection of the highest available limits of uninsured motorist coverage where the insured already has the minimum coverage "would result in the insured being placed in the position as though an uninsured motorist, with whom the insured was involved in an accident, had purchased the same liability policy as that purchased by the insured." The opinion adds that under the reasoning

in *Moser* this result goes beyond the mandate of 36 O.S.1981, § 3636.

The reasoning implies that § 3636 does not provide for an insured being placed in a superior position than the minimum statutory requirement of $10,000/$20,000 found in 47 O.S.1981, § 7–204(a). But § 3636 does contemplate such a result. The statute in the second sentence of subsection B provides:

> Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47, Oklahoma Statutes, as the same may be hereafter amended; provided, however, *that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured.* [Emphasis added.]

If the appellants had offered, and the appellees had purchased uninsured motorist protection up to the limits of their bodily injury liability, the protection would have been $250,000/$500,000. That is *twenty-five times* the minimum required by 47 O.S.1981, § 7–204. The legislature clearly allows the insured the choice of being in a better position than a motorist who chooses only the minimum coverage required by law.

When the Supreme Court of Florida determined that rejection in writing of a higher limit of uninsured motorist coverage was not required by the statutes of that state,[1] Florida's legislature subsequently amended its statutes to require that the rejection or selection of lowered limits of uninsured motorist coverage be made on a form, and further provided for the basic content of the form.[2] If Oklahoma's legis-

lature desires a similar result it should amend § 3636.

## II.

Notice by the appellants was mailed in August of 1977, stating that the Oklahoma Legislature had passed a law requiring an insurance company to offer to provide uninsured motorist coverage with increased limits of liability. That notice is quoted in the majority opinion. However, the majority opinion perfunctorily disposes of appellees' major contention that the notice was insufficient as an offer of increased coverage.

I question whether the increased limit was ever knowingly rejected. In pertinent part, that notice read:

> The Oklahoma Legislature recently passed a law which requires an insurance company to offer to provide Uninsured Motorists coverage with increased limits of liability.
>
> \* \* \* \* \* \*
>
> The endorsement on the reverse side amends the Uninsured Motorists provisions of the policy to comply with the new law.
>
> If you wish to increase your Uninsured Motorist limits of liability, please contact your agent. You may not select higher limits than your policy's Bodily Injury Liability Limits.

The endorsement on the reverse side amended the uninsured motorist portion of the policy as follows:

1) The Limits of Liability are amended to provide:

> The limit of the Company's liability, unless otherwise stated in the Declarations, shall be the limits of bodily injury liability required by the motor vehicle

---

**1.** *Kimbrell v. Great American Ins. Co.,* 420 So.2d 1086 (Fla.1982).

**2.** Fla.Stat.Ann. § 627.727(1) (West Supp.1988) provides in pertinent part:

The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected.

The heading of the form shall be in 12–point bold type and shall state: 'You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully.' If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits.

financial responsibility law of the State of Oklahoma.

That notice was mailed in August of 1977. The April 8, 1982 renewal notice showed the limits of bodily injury as being $250,000 per individual, and $500,000 per accident. Under the column marked UM for "uninsured motorist" are the initials COV for "covered." The cover sheet does not tell how much that coverage is. In order for an insured to make an informed decision, he must be able to understand the offer which is being made. Nothing on the endorsement, or the renewal notice informed Mr. Mann what his coverage was after his policy had been amended. Therefore the amount of coverage provided by the policy for uninsured motorist protection is ambiguous. Where the wording of an insurance policy causes an ambiguity, the doubt raised will be resolved in favor of the insured. *Pitchford v. Electrical Workers' Ben. Ass'n.*, 189 Okl. 82, 113 P.2d 591, 593 (1941).

Section 3636(B) provides that increased limits of liability "shall be offered and purchased if desired" [3] and requires that the insurance company offer increased limits of coverage not to exceed the limits provided in the policy of bodily injury liability of the insured. If the insured cannot ascertain the amount of coverage under his policy, he cannot knowingly reject the coverage which the statute provides must be offered.[4] As the amount of coverage was ambiguous, and because the insured did not knowingly reject the increased coverage, I would find that these facts subject the insurer to the amount required to be offered, in this case $250,000.00 per individual.

There is a second reason for finding that the "offer" made in the notice sent in August of 1977 was insufficient. The notice preceded material changes in the policy. Those changes constitute a new policy, not a renewal policy. If the policy is not a renewal policy, then uninsured motorist coverage is *automatically* included in the insurance policy. *After* the notice was sent in August of 1977, two things happened which made the present policy a new policy, and which required the inclusion of uninsured motorist coverage. On July 8, 1979, the policy was cancelled for nonpayment. In August the policy was "reinstated" for the "balance of term." On April 8, 1981, a notation is made by the appellants that the policy was "superceded" and converted to a plan raising coverage from $100,000/$300,000 to $250,000/$500,000. On June 2, 1981, Travis Mann's 1980 Chevrolet pickup was added.

How can this Court find that a policy which has been *cancelled* and reinstated over a month later for the balance of the term, leaving a one month gap in coverage, and in which the coverage was more than doubled is a "renewal" policy? Conversely, if this is a new policy, where is the evidence that the appellants offered uninsured motorist coverage up to the liability limit of $250,000/$500,000 as required by 36 O.S.1981, § 3636(B)?

---

3. Significantly the Legislature exchanged the word "may" in 36 O.S.1971, § 3636(B) for "shall" in mandating that "increased limits of liability shall be offered" in the 1976 amendment. 1976 Okla.Sess. Laws, ch. 28, § 1.

4. *Hicks v. State Farm Mutual Automobile Ins. Co.*, 568 P.2d 629 (Okla.1977), provides an example of a notice which is sufficient to satisfy 36 O.S.1981, § 3636. The issue in *Hicks* was whether or not the insured voluntarily and knowingly rejected uninsured motorist coverage. The insurer had mailed the insured a proposed endorsement which, if it had been accepted, would have provided the insured with uninsured motorist coverage by the payment of a small additional premium charge. The policy defined the coverage in plain language so that the waiver could be understood, and the policy contained a strong recommendation that the insured accept the uninsured motorist coverage. The insured signed the rejection of coverage, dated it, subtracted the additional premium from the amount due and mailed the proposed endorsement and rejection back to the insurer. Had a similar method of notice been followed in the case at bar, the insured would have clearly understood what additional premium he would have to pay to increase his uninsured motorist coverage to equal his bodily injury liability limit, and what his present coverage was. As noted in the majority opinion in note 12, *Hicks* has subsequently been modified by *Beauchamp v. Southwestern National Ins. Co.*, 746 P.2d 673 (Okla.1987).

For the reasons stated, I would find that the appellees were covered by an uninsured motorist provision in the amount of the policy, $250,000/$500,000.

### III.

May the coverage for the other vehicles included in the policy be stacked? The trial court citing the *Shepard* opinion concluded that they could not be. In *State Farm Mutual Ins. Co. v. Wendt,* 708 P.2d 581, 583 (Okla.1985) this Court held that, "[O]nce a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissively limit uninsured motorist coverage are void as violative of the public policy espoused by 36 O.S.1981 § 3636." In distinguishing *Shepard* from *Wendt* this Court stated: "In *Shepard* the insurance policy *by definition precluded* as an 'insured' any resident relative of the named insured who owned an automobile." (Emphasis in original.) *Wendt,* 708 P.2d at 586. In the case at bar there is only one policy which lists multiple vehicles. In *Wendt* there were four policies, and this Court allowed recovery under each of the four policies reasoning "Where insurance premiums have been paid for separate policies, then the insurer must provide coverage under each policy." *Wendt,* 708 P.2d at 585. But whether or not the insured may recover for multiple vehicles in the case at bar depends not on whether there are multiple policies, but upon whether the insured paid multiple premiums. In *Richardson v. Allstate Insurance Co.,* 619 P.2d 594, 598 (Okla.1980), this Court held that where an insured had paid three premiums for uninsured motorist coverage in a single policy governing three vehicles, he was entitled to multiple coverage. This Court reasoned: "The basic premise underlying the rationales used to justify stacking is that consideration for multiple premiums is multiple coverage." *Richardson,* 619 P.2d at 598.

Upon remand the fact finder must determine if the insured paid multiple premiums for the vehicles under his insurance policy. If so, then for the reasons I have stated, he is entitled to multiple coverage.

### CONCLUSION

Accordingly, I would affirm the trial court's conclusion that the limit of the uninsured motorist policy was $250,000/$500,000. I would reverse the trial court's conclusion that the Manns were not entitled to stack the coverage, and direct that a determination must be made as to whether or not multiple premiums were paid on the vehicles included in the policy. If so, as a matter of law, the insured is entitled to stack the coverage.