**MAGNOLIA PIPE LINE COMPANY now Mobil Pipe Line Company, Plaintiff in Error,**

v.

**Link COWEN d/b/a Link Cowen Construction Company, Centrex Construction Company, Inc., Metropolitan Paving Company, Inc., Bob Hussey, Gill Construction Company, a corporation, and William Gill, Jr., Defendants in Error.**

**No. 42632.**

Supreme Court of Oklahoma.

Dec. 8, 1970.

S. M. Groom, Jr., Robert W. Richards, Oklahoma City, Charles B. Wallace and Donald G. Canuteson, Dallas, Tex., for plaintiff in error.

C. J. Watts and John B. Hayes, Watts, Looney, Nichols & Johnson, Oklahoma City, for defendants in error.

McINERNEY, Justice:

The Defendant contractors-subcontractors damaged Plaintiff's underground pipeline while they were engaged in construction work at Tinker Air Force Base, Oklahoma. The actual damage occurred when one of their digging or bulldozing machines, called a "ripper," struck the pipeline and caused a dent or stricture therein. Plaintiff did not discover the damage until some months later, when a "scraper" or internal cleaning device, which had been inserted into the pipeline at Ft. Worth, Texas, failed to appear on schedule at the pipeline's Oklahoma City terminus. Upon search and excavation, the scraper was found blocked by the stricture at Tinker.

The primary cause of action against the Defendants was for their alleged negligence in damaging the pipeline in the first place. The second cause of action was for the Defendants' failure to advise Plaintiff of the event, and especially the location, of the accident, which failure resulted in Plaintiff's having to dig up unnecessarily about a quarter-mile of pipeline merely to find the point of injury. The trial court, sitting without a jury, found for the Defendants on both counts, and Plaintiff brings this appeal as to both trial findings.

On its first cause of action Plaintiff primarily urges the Defendants' admitted injury to the pipeline, and alleges that they knew or should have known that the pipeline was there. The Defendants' answer, after confession of causing the physical impact, was that the line was several feet

above the depth the Base plans showed it to be; that they had a right to rely on the line's published depth; and that had the line been at its prescribed depth, the accident would not have occurred.

■ That a contractor has the right to rely on pipeline depths as published on official plats would seem established under the reasoning of two cases cited by Defendants, Phelps v. Woodward Const. Co. et al., 66 Wyo. 33, 204 P.2d 179, 186 (1949) and Richey & Gilbert Co. v. Northwestern Natural Gas Corp., 16 Wash.2d 631, 134 P.2d 444, 449 (1943). There also appears from the record to be substantial evidence, though not without some dispute, upon which the trial court could have based its finding that the Defendant's "ripper" was only penetrating the soil to a depth of 13 inches at the time and place of impact, a finding that by itself would tend to indicate that the line was in fact buried too shallow. However, Plaintiff contends that there is further evidence in the record to support a finding that the surface of the soil at the time of the accident had already been graded down from its original elevation as it was before the grading operation had commenced, and that the line had been at its safe and proper depth beneath this original surface.

As we understand the parties' briefs, however, the question is ultimately to be resolved by determining the line's absolute altitude above sea level, and not by its depth relative to the surface at some point in time. The official plat indicated that the pipeline at the point of injury should have been at about 1215 feet above mean sea level, and Plaintiff's surveyor and technical people testified as to the fact of said elevation. Defendants' surveyor and personnel, however, testified as to the line's elevation at point of injury as being about 1218 feet above sea level. It is obvious from the trial court's judgment that the district judge, sitting without a jury, found that the Defendants' surveyor made a more persuasive witness and case than did the Plaintiff's surveyor; and finding

as a controverted fact, upon the weighing of conflicting expert and non-expert testimony, that Plaintiff's pipeline was about three feet higher than it should have been, he thereupon entered judgment for the Defendants.

■ In arguing this appeal the Plaintiff readily recognizes that this Court does not sit to reweigh a trial court's finding of evidentiary fact, so long as supported by competent evidence in the record. Instead, therefore, Plaintiff advances the argument that the Defendants' surveyor's presentation constituted "no" evidence, for which reason we may reverse the trial judge's factual finding, citing Indian Terr. Illum. Oil Co. v. Henning, 179 Okl. 462, 66 P.2d 83 (1937), Syl. 2; Transport Indem. Co. v. Page, Okl., 406 P.2d 980 (1965), Syl. 3.

■ However, as we view the admittedly conflicting and contradictory evidence and expert testimony in the record, it is apparent that Plaintiff is arguing its "no" evidence theory purely because of the assertedly pre-emptive presence in the record of its own survey, which is alleged to be more accurate than Defendants' (because of superior "control," and the like); but this argument, in substance, goes more truly to the weight, and not to the existence, of the adversary parties' case. Taking the testimony of the Defendants' surveyor and other witnesses as a whole, we find that there was sufficient, competent testimony upon which to base the finding that Plaintiff's pipeline was in fact buried considerably shallower than it should have been. And since this factual finding by a trial judge sitting without a jury is supported by competent expert testimony and other evidence, we affirm the trial court's judgment as to the first cause of action. Tulsa Auto Dealers Auction v. North Side State Bank, Okl., 431 P.2d 408 (1967), Syl. 3; Oklahoma Ry. Co. v. Gaines, 200 Okl. 585, 198 P.2d 411 (1948).

On its second cause of action Plaintiff urges, that Defendants' failure to advise it of the location of the impact was the proximate cause of Plaintiff's subsequently

having to excavate about a quarter-mile of its buried pipeline merely to locate the injury, and to commence repair. Assuming that the Defendants' failure to inform was the proximate cause of Plaintiff's excavation expenses, there still can be no recovery therefor in the absence of some duty to inform, whether in contract or in tort.

 On the point of a contractual duty to inform, Plaintiff submits the following language from its duly recorded pipeline right-of-way easement with the Government:

"* * * and dirt covering said pipeline right-of-way shall not be added to or removed without the Grantee's written consent."

Taking the instrument as a whole, however, it is apparent that it is the *Government,* as grantor privy to the easement grant, that has the duty to inform, and not the public at large; furthermore, this contractual duty of the Government to inform goes to the removal or addition of cover over the pipeline, and not to impacts as such. It appears from the record that Plaintiff was fully cognizant at all times of the Government construction projects in progress at Tinker, and of their location, and that the Defendants did in fact inform a representative of the Government at Tinker Field of the incident. There was therefore clearly no breach of any *contractual* duty owed by *Defendants* to Plaintiff.

 On the question of a non-contractual duty to inform, we are cited no authority establishing such a duty in the circumstances presented by this record. It is further apparent that the trial court's express determination of no duty to inform must necessarily have rested upon an implied finding that Defendants did not actually or constructively realize that their contact with the pipeline had caused a significant stricture therein. And the evidentiary basis for that conclusion can derive from Defendants' testimony that they were not absolutely certain that it was the pipeline rather than hard rock that their ripper had hit; that the pipe was never exposed

to view at the time of the incident; that they removed all personnel from the area as a cautionary measure; that after continued observation no discharge from the pipe was observed; that Defendants thereafter moved back into the area and resumed their activity; that they did inform a representative of the Government at Tinker Field of the incident; and that they were never informed of Plaintiff's desire to locate the point of the injury, or of the purpose several months later when Plaintiff's personnel came out to dig up the right-of-way.

On the basis of the foregoing testimony, we cannot say that the trial court's factual premises for finding no actionable negligence by Defendants on this second cause of action is without the support of competent evidence. Tulsa Auto Dealers Auction v. North Side State Bank, and Oklahoma Ry. Co. v. Gaines, supra.

Affirmed.

All the Justices concur.