1998 OK CIV APP 132

OKLAHOMA NATURAL GAS COMPANY, A DIVISION OF ONEOK INC., Plaintiff/Appellee,

v.

UTILITY CONTRACTORS, INC. and Middlecreek Mining Company, Inc., Defendants/Appellants.

No. 88506.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 31, 1998.

Roger R. Williams, Donald B. Bolt, III, Williams & Bolt, P.A., and Larry B. Lipe, Robert D. James, Lipe, Green, Trump & Dreyer, Tulsa, for Defendants/Appellants.

Stuart D. Campbell, John M. Sharp, Gable Gotwals Mock Schwabe Kihle Gaberino, Tulsa, for Plaintiff/Appellee.

## OPINION

ADAMS, Judge:

¶1 Defendants/Appellants Utility Contractors, Inc. (Utility) and Middle Creek Mining Company, Inc. (Middle Creek) (collectively, Contractors), appeal the trial court judgment based upon separate jury verdicts in favor of Plaintiff/Appellee Oklahoma Natural Gas Company, a division of ONEOK Inc. (ONG) on its negligence and breach of contract/third party beneficiary theories of relief. We affirm.

## FACTS

¶2 ONG sued Contractors for damages, alleging they negligently ruptured ONG's high pressure gas line during construction of a sewer project in Tulsa, Oklahoma. Contractors denied the allegations, claiming instead that the damages were solely and proximately caused by ONG and its agents. After discovery, ONG asserted two additional theories of recovery or liability against Contractors: (1) negligence *per se* because of Contractors' alleged failure to comply with the Oklahoma Underground Facilities Damages Prevention Act, 63 O.S.1991 § 142.1 *et seq.*, (the Act), *i.e.*, Contractors failed to notify the Oklahoma One–Call System, Inc. (Call–Okie) [1] and to physically locate the gas

---

1. Pursuant to 63 O.S.1991 § 142.3(B), all oper-   ators of natural gas pipelines subject to the jur-

line before beginning excavations in the area; and (2) breach of the contract between the City of Tulsa (City) and Utility to which ONG claimed third party beneficiary status.

¶ 3 During the three day jury trial, the parties stipulated, in pertinent part, that: (1) Utility was awarded a contract with City to lay a 24 inch sewer line on the southside of Interstate 44 in Tulsa, Oklahoma, known as the Whitney Home Owners' Sanitary Sewer Project, (2) that Middle Creek was working as an agent on behalf of Utility, and (3) that on March 3, 1993, an agent or employee of Contractors, while operating excavating machinery near 31st Street and South Memorial Drive in Tulsa, Oklahoma, struck a natural gas pipeline.

¶ 4 According to the undisputed evidence admitted at trial, ONG's operating technician, Mr. Howard, marked the horizontal location of the gas line on the plans sent to ONG by the engineering firm hired by City, but not the vertical depth, because the depth would not be known unless the line was "physically dug out." He also marked the same plans with a stamp "GAS LINES LOCATIONS APPROX." Upon receiving those plans from ONG, the draftsman for City's engineering firm noticed there was no vertical depth for the gas line so he assigned a "normal" depth of 4 feet to the gas line on the vertical profile on the set of engineering plans (final plans) ultimately used at a September 14, 1992 meeting called by City between Contractors, the engineers and all operators of underground facilities in the area of the project.

¶ 5 The first page of the final plans was stamped "Issued for Construction." The second page had a box with the Call Okie "Do not dig" symbol next to the warning "Before you dig: Call Okie 1–800–522–6543," and an explanation that a contractor must verify the location of the utilities prior to construction. The page with the gas line marked at the 4 foot level in the vertical profile included a box with the language "WARNING!!

HIGH PRESSURE GAS CROSSING! CONTACT O.N.G. PRIOR TO BORE" from which two arrows pointed to the 16 inch high pressure gas line marked in the horizontal profile. ONG's representative at the September 14, 1992 meeting, Mr. Lawson, did not know whether the 4 foot depth on the final plans was correct or not, and when asked about the gas line at the meeting, responded that it existed and that ONG should be notified before digging.

¶ 6 City's civil engineer and project manager for the sewer project at issue, Mr. Spear, testified that the very reason the bore was being performed was to avoid cutting up Memorial and affecting traffic flow, that he believed ONG had given the exact location, and that he would have arranged to have the line physically located if he had known that they did not have at least a very close approximation of the line's location.

¶ 7 Contractors called Call–Okie to request markings for all underground utilities along the sewer project on September 23, 1992, two days before beginning construction. ONG marked the gas line on September 30, 1992, and then again in late January, 1993. The construction in the area of 31st Street and Memorial Drive did not begin until February, 1993. It is undisputed that Contractors did not contact ONG prior to boring at that location and made no attempt to field locate the gas line prior to its rupture on March 3, 1993.

¶ 8 After ONG rested, Contractors demurred to the evidence. The trial court declined to make a decision until hearing all the evidence. After Contractors rested, they renewed their demurrer and moved for a directed verdict, which the trial court overruled. The trial court submitted verdict forms to the jury allowing them to separately find whether Contractors were liable on negligence theories and whether they were liable on a breach of contract theory. The returned verdicts found in favor of ONG on negligence, finding Contractors 90% negli-

isdiction of the Oklahoma Corporation Commission shall participate in a statewide one-call notification center. Operators may establish notification centers, so that an excavator may satisfy the notice provisions of the Act with one

call. This procedure is called the "One Call System." *Jones v. Oklahoma Natural Gas Company,* 1994 OK 89, 894 P.2d 415. "Call Okie" is the name for the one-call system in this case.

gent and a non-party 10% negligent, and also found Contractors had breached its contract with City, that the breach directly caused damages to ONG, and that it was entitled to recover as a third-party beneficiary. Both verdicts assessed damages in the same amount—$134,469.39. After the trial court entered its judgment based on the jury verdicts, Contractors filed this appeal, arguing, as they did at trial, that as matter of law: (1) the sewer project was a "preengineered project" and thus is exempt from the Act's requirements; (2) ONG was not an intended beneficiary of the sewer project contract; and (3) they had a right to rely on official plans pursuant to *Magnolia Pipe Line Company v. Cowen,* 1970 OK 223, 477 P.2d 848.

## ANALYSIS

■ ¶ 9    Pursuant to 63 O.S.1991 § 142.6, two duties are imposed on an "excavator": (1) to notify all operators with underground facilities on or near the excavation area no more than 10 days nor less than 48 hours before excavation, and (2) after the operators of the underground facilities have marked the approximate location of such, to hand dig test holes to determine the *precise location* of the underground facilities in advance of excavation.[2]    An excavator is also required to determine the precise location of all underground facilities before using powered or mechanized equipment directly over marked routes of such facilities. *See* 63 O.S.1991 § 142.7. The Legislature intended the Act to protect both the public and the underground facilities. *See Jones v. Oklahoma Natural Gas Company,* 1994 OK 89, 894 P.2d 415.

¶ 10    In their first proposition of error, Contractors argue that the trial court erred in overruling their motion for directed verdict on the issue of negligence *per se,* submitting a negligence *per se* instruction, and submitting an instruction including numerous sections of the Act. They argue that the

uncontradicted evidence clearly established that the sewer project was a "preengineered project," which is specifically exempted from the § 142.6 duties.    In support thereof, they rely on the "plain language" of the Act, specifically 63 O.S.1991 §§ 142.2(5), 142.2(12) and § 142.11.

¶ 11    Section 142.11, entitled "Exemptions," provides that "public agencies and their contractors engaged in work within the public right-of-way which work is *a pre-engineered project, certified project or routine maintenance* shall be exempt from the provisions of this act."    (Emphasis added).    It is undisputed that City is a public agency and that Contractors were engaged in work for City "within the public right-of-way" at the time of the gas line rupture.    The definition of "excavate" in § 142.2(5) specifically provides that *routine maintenance, a pre-engineered project,* and *a certified project,* "shall [not] be deemed excavation."    Therefore, *if* the sewer project meets the definition of a "preengineered project," Contractors would clearly be exempt from an excavator's § 142.6 duties.

¶ 12    According to § 142.2(12), "preengineered project" means:

a public project wherein the public agency responsible for such project, as part of its engineering and contract procedures, holds a meeting prior to the commencement of any construction work on such project in which all persons, determined by the public agency to have underground facilities located within the construction area of the project, are invited to attend and given an opportunity to verify or inform the public agency of the location of their underground facilities, if any, within the construction area *and where the location of all known underground facilities are duly located or noted on the engineering drawing and specifications for the project;*    (Emphasis added).

---

2.    "Excavate" means "to dig, compress or remove earth ... but not necessarily limited to, auguring, *boring* " (emphasis added) and an "excavator" means "a person or public agency that intends to excavate within the State of Oklahoma."    63 O.S.1991 § 142.2(5) and (7).    "Person" includes "any individual, partnership, corporation, association, cooperative, trust or other

entity, including a person engaged as a contractor by a public agency, but not including a public agency."    63 O.S.1991 § 142.2(11).    "Public agency" means "the state or any board, commission or agency of the state, and any city, town, county, subdivision thereof or other governmental entity."    63 O.S.1991 § 142.2(13).

¶ 13 Contractors claim the following evidence supports their argument that the sewer project is a "preengineered project" as defined by that section: (1) four witnesses testified they attended, together with ONG and other utilities with underground facilities in the area of the sewer project, a "Pre-Construction Conference" which was held to discuss problems and to locate underground facilities on the engineering drawing and specifications; (2) the representatives for City and Utility testified they understood the sewer project to be "preengineered" such that responsibility for location of underground facilities transferred to the owners of such and the engineers; (3) no one denied that the "Pre–Construction Conference" took place; and (4) no witness denied that Mr. Lawson failed to express any concern for the gas line, other than a statement to call ONG to have it located. ONG disagrees, arguing that the project was not "preengineered" because the location of all known underground facilities were not located on the engineering drawing and specifications for the project.

¶ 14 Whether the sewer project was "preengineered" does not depend on what the meeting was called, or what the attendees believed or intended it to be, as most of Contractors' evidence suggests. Considering the emphasized phrase in § 142.2(12), we agree with ONG's basic argument that the location of all known underground facilities must be "located" on the engineering drawings in order for the project to be "preengineered." The dispositive issue here is what is required by the phrase "duly located or noted." Does § 142.2(12) mean that a "preengineered project" must have both the *horizontal* and *vertical* depth of all known underground facilities noted and located on plans at that meeting?

■■■■ ¶ 15 Statutory interpretation is a question of law. *Oklahoma Employment Se-*curity Commission v. Oklahoma Merit Protection Commission, 1995 OK CIV APP 76, 900 P.2d 470. The primary goal of statutory construction is to ascertain legislative intent; such intent is ascertained from the whole act in light of the general purpose and objective. *City of Bethany v. Public Employees Relations Board of the State of Oklahoma*, 1995 OK 99, 904 P.2d 604. If the language is plain and clearly expresses legislative will, such language will be followed without further inquiry. *State ex rel. Department of Public Safety v. 1985 GMC Pickup*, 1995 OK 75, 898 P.2d 1280. We must consider the statute as a whole, not just individual provisions. *Keck v. Oklahoma Tax Commission*, 188 Okl. 257, 108 P.2d 162 (1940). When a legislative act includes a definition, that definition is binding on the courts. *Oliver v. City of Tulsa*, 1982 OK 121, 654 P.2d 607.

¶ 16 Consistent with its purpose to protect the public and the underground facilities, the Legislature, by its enactment of § 142.11, exempts from the Act's § 142.6 notification and location duties certain work "within the public right-of-way" *provided* the work either (1) meets certain requirements, *i.e.*, certified or preengineered projects, or (2) is limited to certain activities that will not involve any underground facilities, *i.e.*, routine maintenance.[3] The requirement for both a "certified project" and a "preengineered project" is clearly found in the last phrase of each definition—that all known underground facilities are *duly located or noted* on the engineering drawings.

¶ 17 The phrase—duly located or noted—is used in only the definitions of a "certified project" and a "preengineered project." However, neither the terms "locate" or "location," or the phrase "duly located or noted" are defined by the Act. In absence of a contrary definition, words in a statute are to

3. "Certified project" means "a project where the public agency responsible for the public project, as part of its procedure, certifies that the project right-of-way is free and clear of underground facilities or wherein the public agency responsible for such project, as part of its procedure, notifies all persons determined by the public agency to have underground facilities located within the construction right-of-way and certifies that all known underground facilities are duly located or noted on the engineering drawings for the project." 63 O.S.1991 § 142.2(1). "Routine maintenance" means "the grading of roads and barrow or drainage ditches, the removal and replacement of pavement including excavation relating thereto and the installation and maintenance of drainage and bridge facilities, signs, guardrails, and electrical and communications facilities in or on the public rights-of-way by a public agency." 63 O.S.1991 § 142.2(14).

be given the same meaning as that attributed to them by ordinary and common definitions. 25 O.S.1991 § 1. The word "locate" means "to determine or indicate the place of, to define the site or limits of, or to set or establish in a *particular* spot or position"; "duly" means "in a due manner, time or degree" or "sufficiently"; and "noted" means "marked" or "to record or preserve in writing." *Websters Third New International Dictionary* (1986). (Emphasis added). Considering § 142.6 and § 142.7 both require an excavator to determine the "precise location" of the underground facilities, which term is similarly not defined within the Act, the only reasonable interpretation of "duly located or noted" should correspond with its meaning. Although the meaning of that term is fairly evident, "precise" means "exact to a point, being without deviation, absolute." *Websters Third New International Dictionary* (1986).

¶ 18 The only other use of the word "locate" is provided within the definition of "permitted project," which public work the Legislature excluded from the § 142.2(5) definition of "excavate," but did not include with the other three § 142.11 exemptions. Pursuant to § 142.2(10), the term "permitted project" is defined as:

> a project where a permit for the work to be performed must be issued by a state or federal agency and, *as a prerequisite* to receiving such permit, *the applicant must locate* all underground facilities in the area of the work and in the vicinity of any blasting and notify each owner of such underground facilities.

It is clear from this definition the reason the Legislature did not need to include a "permitted project" with the other three § 142.11 exemptions—a permit applicant has already performed the Act's § 142.6 notification and location duties, thus ensuring both the protection of the public and the underground facilities.

¶ 19 Based on our interpretation of the Act as a whole and the Legislative purpose, the phrase "duly located or noted" can only mean that the precise horizontal and vertical depths of all known underground facilities be written or recorded on the engineering drawings and specifications at the meeting held by the public agency prior to the commencement of any construction work. This interpretation not only supports the Legislature's objective behind § 142.11—to decrease the time and the money contractors for public agencies would otherwise spend on public projects if they did not have such information available, but it also is consistent with allowing such projects to be exempt from the general requirement that the precise location be physically determined at the site. Furthermore, it is the only interpretation consistent with the Act's general purpose and the various forms of the word "locate" used in the Act.

¶ 20 Given the undisputed evidence, we agree that the question of whether this project was "preengineered" was a question of law for the trial court. However, we must conclude that it did not meet the statutory definition. Contractors admit that Mr. Lawson, ONG's representative at the September 14, 1992 meeting, cautioned them "to call ONG to have [the gas line] located." That statement, together with the various warnings stamped on the final plans used at that meeting, clearly establish that the vertical depth of the gas line was unknown, despite the one indication otherwise. Accordingly, Contractors were not exempt from the Act's § 142.6 notification and location requirements and the question whether they violated the statute, or negligence *per se*, was an issue for the jury.[4]

¶ 21 The jury also considered the theory of general negligence, and Contractors argue this was error because they had a right to rely on official plans pursuant to *Magnolia Pipe Line Company v. Cowen*, 1970 OK 223, 477 P.2d 848. According to Contractors, *Magnolia* stands for the proposition that an excavator is entitled to rely upon the location of a pipeline shown on "official" plats and cannot be liable for damaging the pipeline where that location was wrong. If that is a correct reading of *Magnolia*, and we need

4. Any error of the trial court in allowing the jury to decide whether this project was "preengineered" is harmless.

not determine that here, the Court allocated the burden of avoiding excavation damage to the pipeline company by requiring the location of its lines to be properly shown on "official" plats.

¶ 22 It is apparent that the Legislature reallocated that burden when it adopted the Act and placed the burden on the excavator to comply with the Act to physically locate underground facilities unless the project was exempt. The defense for which Contractors cite *Magnolia* was removed for non-exempt projects when the Legislature adopted the Act. The trial court did not err in submitting the negligence theory to the jury.

¶ 23 Because the jury made specific findings on the negligence issues and found Contractors liable on that issue, we need not determine whether liability should also have been based on breach of contract or whether that theory should not have been submitted to the jury. Any error in that regard is harmless. The trial court's judgment is affirmed.

AFFIRMED.

HANSEN, J., and BUETTNER, P.J., concur.